**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JORGE MIRANDA; IRENE MIRANDA,
　　　　　*Plaintiffs-Appellants,*

　　　　　v.

CITY OF CORNELIUS; ACME TOWING,
INC.,

　　　　　*Defendants-Appellees.*

No. 04-35940

D.C. No.
CV-04-00241-AA

OPINION

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Argued and Submitted
September 13, 2005—Portland, Oregon

Filed November 17, 2005

Before: Raymond C. Fisher, Ronald M. Gould,
Carlos T. Bea, Circuit Judges.

Opinion by Judge Gould

**COUNSEL**

Shelly Latin, Oregon Legal Services Corp., Pendleton, Oregon (argued); Spencer M. Neal, Oregon Law Center, Portland, Oregon, for the plaintiffs-appellants.

Gerald L. Warren, Salem, Oregon, for the defendants-appellees.

---

**OPINION**

GOULD, Circuit Judge:

We consider a constitutional challenge to the impoundment of a vehicle from the owners' driveway after a police officer observed the husband teaching his unlicensed wife how to drive. Plaintiffs Mr. Jorge and Mrs. Irene Miranda ("Plaintiffs") appeal the district court's grant of summary judgment for Defendants City of Cornelius (the "City") and Acme Towing, Inc. (collectively "Defendants") and the denial of Plaintiffs' motion for partial summary judgment on Plaintiffs' claim that Defendants' impoundment of their vehicle violated their constitutional rights under the Fourth and Fourteenth Amendments. Plaintiffs allege that the impoundment was an unreasonable seizure under the Fourth Amendment because it conflicts with the principles of the community caretaking doctrine. Generally, the community caretaking doctrine allows the police to impound where necessary to ensure that the location or operation of vehicles does not jeopardize the public safety. We hold that, under the special circumstances of this case, the impoundment of Plaintiffs' vehicle was an unreasonable seizure not justified by the community caretaking doctrine because the police have no duty to protect a vehicle parked on the owners' property and there was no reason to believe that impoundment would prevent any threat to public safety from its unlawful operation beyond the brief period during which the car was impounded. We reverse the district court's grant of summary judgment, and we remand for further proceedings.

**I[1]**

---

[1]We review de novo the district court's grant of summary judgment and may affirm on any ground supported by the record. *U.S. ex rel. Ali v. Dan-*

On April 10, 2003, Mrs. Miranda slowly drove the Ford Aerostar van of her husband, Mr. Miranda, around the neighborhood as her husband taught her how to drive. Although Mr. Miranda is a licensed and insured driver with valid registration of the vehicle, Mrs. Miranda did not have a driver's license. Officer John Calvert, a police officer with the City, noticed that Mrs. Miranda was driving poorly and at a speed of about ten miles per hour, and suspected that she was impaired or improperly licensed. Officer Calvert activated the overhead lights on his patrol car and followed the vehicle until Mrs. Miranda pulled into the driveway in front of the Mirandas' home.

After learning that Mrs. Miranda did not have a driver's license, Officer Calvert cited her for operating a vehicle without a license and also cited Mr. Miranda for permitting the operation of the vehicle by an unlicensed driver. Officer Calvert told the Mirandas that their vehicle would be impounded. In their declarations opposing summary judgment, Plaintiffs submitted evidence that they had trouble understanding Officer Calvert because they have limited English skills and did not know that their vehicle was to be impounded.

A city ordinance, authorized by state statute, allows an officer to tow a vehicle, without prior notice, if the officer has a reasonable belief that the driver is operating it without a valid operator's license. Cornelius City Code § 7.455; Or. Rev. Stat. § 809.720. Officer Calvert waited until the tow truck from Defendant Acme Towing, Inc. removed the vehicle from

---

*iel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1144 (9th Cir. 2004). We must determine whether there is any genuine issue of material fact viewing all evidence in the light most favorable to the non-moving party. *Id.* The facts are largely undisputed, but to the extent any dispute exists, we credit the factual statements submitted by the Mirandas and any reasonable inferences thereon in our assessment of the appeal of the summary judgment granted to Defendants.

the Mirandas' driveway, which occurred about thirty minutes after the stop.

On the morning of the next day, April 11, Mr. Miranda appeared at the police station to pay an administrative fee. He retrieved his vehicle at the impoundment lot after paying additional towing charges and impound fees. Mr. Miranda stated in his declaration that he lost a day's pay from taking this time to retrieve his vehicle. Also on April 11, Ms. Dolley Mack, a police services aide with the City, mailed to Plaintiffs a Notice of Towed Vehicle report, which informed them of their right to contest the tow by mailing a request to the police department within ten days of the tow. On April 15, Mr. Miranda wrote a letter in Spanish to the police department complaining about the tow. The City submitted into evidence the declaration of Ms. Mack stating that "to the best of [her] knowledge, no request for hearing was ever received." Mr. Miranda then received the City's notice, but he did not respond to it. He later went to the City Hall and, as he described it, "spoke with a woman about the tow who told him that he had no basis to complain about the tow." On May 6, Plaintiffs appeared at municipal court and pled guilty to the traffic violations. Plaintiffs did not contest the impoundment during this hearing, and the court imposed no fines on them.

In their complaint brought under 42 U.S.C. § 1983, Plaintiffs alleged that the impoundment was an unreasonable seizure under the Fourth Amendment as incorporated in the Fourteenth Amendment and that they were deprived of due process under the Fourteenth Amendment. Plaintiffs also sought a declaratory judgment that the city ordinance, Cornelius City Code § 7.455, is unconstitutional. The district court held that the seizure complied with the Fourth Amendment because Plaintiffs lacked a reasonable expectation of privacy in their parked car on their unenclosed driveway.[2] On the

---

[2]The district court did not determine whether the impoundment itself was unreasonable. On appeal, Plaintiffs concede that they lack a reasonable expectation of privacy but still allege that the impoundment was an unreasonable seizure.

issue of due process, the district court held that Plaintiffs did not have a right to a hearing before the tow and that they were not denied an opportunity to contest the seizure in a post-tow hearing. The district court granted Defendants' motion for summary judgment and denied Plaintiffs' motion for partial summary judgment. Plaintiffs appeal this order. Plaintiffs request further that summary judgment be entered in their favor on the issues of unreasonable seizure and deprivation of due process, or, alternatively, that the case be remanded for a trial on the issue of whether they were improperly denied an opportunity for a timely post-deprivation hearing.

## II

**[1]** The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment. A seizure results if "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County*, 506 U.S. 56, 61 (1992). The Fourth Amendment protects against unreasonable interferences in property interests regardless of whether there is an invasion of privacy. *Id.* at 62-64 ("Although lacking a privacy component, the property rights in both instances nonetheless were not disregarded, but rather were afforded Fourth Amendment protection.").

**[2]** "A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well delineated exceptions. The burden is on the Government to persuade the district court that a seizure comes under one of a few specifically established exceptions to the warrant requirement." *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001) (internal quotation marks and citations omitted).

**[3]** Defendants acknowledge that the only exception applicable to this impoundment is the "community caretaking" doctrine, but they assert, in light of *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), that we cannot second-guess an

officer's decision to impound so long as the officer had probable cause to believe that the driver violated a vehicle regulation that authorizes the impoundment. Plaintiffs counter that the reasonableness of an impoundment requires more than just the existence of probable cause, but that the impoundment itself must comply with the principles of the "community caretaking" doctrine.

## A

In assessing these claims, we first determine whether probable cause to believe that the driver committed a traffic violation is sufficient justification by itself to make the impoundment of the vehicle reasonable under the Fourth Amendment.

**[4]** In *Atwater*, the Supreme Court held that an officer is deemed to act reasonably under the Fourth Amendment in making a warrantless arrest if the officer had probable cause to believe that the arrested person violated a criminal statute. *Id.* at 354 ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). The Supreme Court in *Atwater* relied on the historical discretion allowed a police officer to make a warrantless arrest when supported by probable cause to believe that the suspect committed a crime. *See id.* at 327-45. In applying this bright-line rule, the Court distinguished other situations where the reasonableness of a search or seizure was determined by "balancing the need to search (or seize) against the invasion which the search (or seizure) entails." *Terry v. Ohio*, 392 U.S. 1, 21 (1968) (citation and internal quotation marks omitted). "*Terry* certainly supports a more finely tuned approach to the Fourth Amendment when police act without the traditional justification that either a warrant (in the case of a search) or probable cause (in the case of arrest) provides; but at least in the absence of 'extraordinary' circumstances, there is no comparable cause for finick-

ing when police act with such justification." *Atwater*, 532 U.S. at 347, n.16 (citation omitted).

**[5]** In sharp contrast to the broad discretion granted in *Atwater*, the Supreme Court in allowing the impoundment and search of vehicles under the community caretaking doctrine has limited the discretion of the impounding officer and has taken a more finely tuned approach to determining reasonableness under the Fourth Amendment. In *Colorado v. Bertine*, the Court allowed "the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." 479 U.S. 367, 375 (1987). A leading treatise declares that this language is "highlighting that while the Supreme Court was not prepared to mandate any particular rules as to when impoundment incident to arrest for a traffic violation was permissible, impoundment is *not* a matter which can simply be left to the discretion of the individual officer." 3 Wayne R. LaFave, *Search And Seizure: A Treatise On The Fourth Amendment* § 7.3, at 624 (4th ed. 2004) (emphasis in original).

The police's authority to search and seize property when acting in its role as "community caretaker" has a different source than its authority to search and seize property to investigate criminal activity. The reasonableness of a seizure under the "caretaker" function differs from the bright-line rule concerning probable cause in the criminal context.[3] "The standard

---

[3]The statutory authority at issue here classifies driving without a license as a traffic violation and not as a traffic crime. *See* Or. Rev. Stat. § 807.010 (2003). Traffic violations, which were originally called traffic infractions, have been decriminalized in Oregon:

> The legislature established a distinction between traffic offenses which it deemed serious enough to carry criminal penalties and those which should not. These latter offenses were defined as traffic infractions. The distinguishing features of the traffic infraction were the absence of incarceration as a possible penalty and the removal of the protections extended to individuals prosecuted for criminal offenses.

*Oregon v. Porter*, 817 P.2d 1306, 1309 (Or. 1991) (citations and internal quotation marks omitted).

of probable cause is peculiarly related to criminal investigations, not routine, non-criminal procedures. The probable-cause approach is unhelpful when analysis centers upon the reasonableness of routine administrative caretaking functions, particularly when no claim is made that the protective procedures are a subterfuge for criminal investigations." *South Dakota v. Opperman*, 428 U.S. 364, 371, n.5 (1976).

**[6]** In their "community caretaking" function, police officers may impound vehicles that "jeopardize public safety and the efficient movement of vehicular traffic." *Opperman*, 428 U.S. at 368-69. Whether an impoundment is warranted under this community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft. *See United States v. Jensen*, 425 F.3d 698, 706 (9th Cir. 2005) ("Once the arrest was made, the doctrine allowed law enforcement officers to seize and remove any vehicle which may impede traffic, threaten public safety, or be subject to vandalism."); *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1477, n.4 (9th Cir. 1993) (impoundment of arrestee's car from private parking lot "to protect the car from vandalism or theft" was reasonable under the community caretaking function). A driver's arrest, or citation for a non-criminal traffic violation as in this case, is not relevant except insofar as it affects the driver's ability to remove the vehicle from a location at which it jeopardizes the public safety or is at risk of loss. But no such public safety concern is implicated by the facts of this case involving a vehicle parked in the driveway of an owner who has a valid license.

**[7]** The reasonableness of an impoundment under the community caretaking function does not depend on whether the officer had probable cause to believe that there was a traffic violation, but on whether the impoundment fits within the "authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience . . . ." *Opperman*, 428 U.S. at 369. We conclude that,

in the circumstances of this case, probable cause to believe that there had been a traffic infraction or non-criminal violation was insufficient to justify an impoundment of a vehicle parked in the owner's driveway, in the absence of a valid caretaking purpose.[4]

**B**

We consider next whether the seizure of the Mirandas' vehicle from their driveway is justified by the community caretaking doctrine. In assessing this question, we must examine whether this seizure is reasonable based on all of the facts presented. *See Cooper v. California*, 386 U.S. 58, 59 (1967) (The issue of "whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case . . . .").

We begin with the premise, apparently not recognized by the Defendants, that the decision to impound pursuant to the authority of a city ordinance and state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment, as applied to the states by the Fourteenth Amendment. "The question in this Court upon review of a state-approved search or seizure is not whether the search (or seizure) was authorized by state law. The question is rather

---

[4]Probable cause to believe there has been a traffic violation is sufficient justification for police officers to seize a vehicle for a traffic stop. *See Whren v. United States*, 517 U.S. 806, 817 (1996). The Court in *Whren* recognized "that the foremost method of enforcing traffic and vehicle safety regulations is acting upon observed violations, which afford the quantum of individualized suspicion necessary to ensure that police discretion is sufficiently constrained." 517 U.S. at 817-18 (citations and internal quotation marks omitted). It held that a seizure following a traffic stop is always justified by probable cause because a traffic stop is a necessary requisite to the enforcement of traffic regulations. However, the impoundment of a legally-parked vehicle is not necessary to enforce traffic regulations and requires some additional justification, as is typically demonstrated by the community caretaking purpose.

whether the search was reasonable under the Fourth Amendment." *Sibron v. New York*, 392 U.S. 40, 61 (1968).**[5]**

[8] An impoundment may be proper under the community caretaking doctrine if the driver's violation of a vehicle regulation prevents the driver from lawfully operating the vehicle, and also if it is necessary to remove the vehicle from an exposed or public location. *See United States v. Gutierrez*, 995 F.2d 169, 171 (9th Cir. 1993) ("After determining that neither Gutierrez nor Cervantes possessed a valid driver's license, the officers advised them that they were free to go, but that they could not drive the Cadillac."); *United States v. Rodriguez-Morales*, 929 F.2d 780, 785 (1st Cir. 1991) ("Upon ascertaining that neither occupant was properly licensed to drive, the decision not to let the vehicle continue on its journey was quintessentially reasonable."). The violation of a traffic regulation justifies impoundment of a vehicle if the driver is unable to remove the vehicle from a public location without continuing its illegal operation.

On the other hand, a decision to impound a vehicle that is not consistent with the police's role as "caretaker" of the streets may be unreasonable. *See United States v. Duguay*, 93 F.3d 346, 352 (7th Cir. 1996). In *Duguay*, the court held that "impoundment based solely on an arrestee's status as a driver, owner, or passenger is irrational and inconsistent with 'caretaking' functions. Under [the police officers'] policies, towing is required any time the arrestee is carted off to jail, regardless of whether another person could have removed the car and readily eliminated any traffic congestion, parking violation, or road hazard." *Id.* at 353. "The policy of impounding the car

---

**[5]**Accordingly, we do not make any conclusion as to the constitutionality of the city ordinance, but confine our analysis to the reasonableness of the seizure at issue here. *See Sibron*, 392 U.S. at 62 ("Our constitutional inquiry would not be furthered here by an attempt to pronounce judgment on the words of the statute. We must confine our review instead to the reasonableness of the searches and seizures which underlie these two convictions.").

without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impoundment is for the 'caretaking' of the streets." *Id.*

[9] The state has the right to allow the driver to drive away with the vehicle only if he or she is able to do so in compliance with all regulations intended to ensure the vehicle's safe operation.[6] However, the decision to impound a vehicle after the driver has violated a vehicle regulation must consider the location of the vehicle, and whether the vehicle was actually "impeding traffic or threatening public safety and convenience" on the streets, such that impoundment was warranted. *See Opperman*, 428 U.S. at 369. While Officer Calvert may not have believed that the Mirandas would comply with all regulations in the future, when he issued citations and called for the vehicle to be impounded, the vehicle was already parked in the Mirandas' home driveway. Mr. Miranda was licensed to drive the car. Under these circumstances, the Mirandas' car was not creating any impediment to traffic or threatening public safety. An officer cannot reasonably order an impoundment in situations where the location of the vehicle does not create any need for the police to protect the vehicle or to avoid a hazard to other drivers. *See United States v. Squires*, 456 F.2d 967, 970 (2d Cir. 1972) ("However, since the Cadillac was parked in the parking lot behind the apartment house in which appellant lived, which was an appropriate place for it to be, and appellant did not consent to its removal, the officers did not have a reasonable basis for concluding that it was necessary to take the Cadillac to the police station in order to protect it.").

---

[6]An impoundment is proper to prevent the immediate and continued unlawful operation of the vehicle or to remove a vehicle left in a public location where it creates a hazard. An officer, acting within the scope of his or her community care-taking function, is not required to consider "the existence of alternative less intrusive means" when the vehicle must in fact be moved to avoid the creation of a hazard or the continued unlawful operation of the vehicle. *See Bertine*, 479 U.S. at 374 (internal quotation marks omitted).

Defendants have argued that the impoundment satisfied the "caretaking" function by deterring the Mirandas from repeating this illegal activity in the future. Such a rationale would expand the authority of the police to impound regardless of the violation, instead of limiting officers' discretion to ensure that they act consistently with their role of "caretaker of the streets." *See Duguay*, 93 F.3d at 352. The decision to impound must be guided by conditions which "circumscribe the discretion of individual officers" in a way that furthers the caretaking purpose. *Bertine*, 479 U.S. at 376, n.7.

**[10]** While the Supreme Court has accepted a deterrence rationale for civil forfeitures of vehicles that were used for criminal activity, *see Bennis v. Michigan*, 516 U.S. 442, 452 (1996), the deterrence rationale is incompatible with the principles of the community caretaking doctrine. Unlike in civil forfeitures, where the seizure of property penalizes someone who has been convicted of a crime, the purpose of the community caretaking function is to remove vehicles that are presently impeding traffic or creating a hazard. The need to deter a driver's unlawful conduct is by itself insufficient to justify a tow under the "caretaker" rationale.

**[11]** The deterrence rationale is also not a sufficient justification here because of the negligible deterrent effect in this case. Mr. Miranda was at all relevant times licensed to drive. And because Mr. Miranda retrieved the car the next morning, its absence cannot be viewed as a significant deterrent to further unlicensed driving by Mrs. Miranda. In addition, the towing fees simply replaced the actual fines from the citations because the municipal judge who held the citation hearing waived any additional fine. Thus, the effect of any conceivable financial deterrent was neutralized. The City has not demonstrated in law or logic that deterrence is a sufficient purpose to justify the particular impoundment that occurred here.

## III

Plaintiffs further claim that they were deprived of procedural due process in violation of the Fourteenth Amendment. They assert that they were entitled to notice and a hearing on the validity of the impoundment before their vehicle was seized and impounded. They also assert that they were denied a meaningful opportunity to contest the impoundment in a post-deprivation hearing.

## A

**[12]** "We assess due process case-by-case based on the total circumstances." *California ex rel. Lockyer v. F.E.R.C.*, 329 F.3d 700, 711 (9th Cir 2003). "Constitutional due process requires that a party affected by government action be given 'the opportunity to be heard at a meaningful time and in a meaningful manner.' " *Id.* at 708, n.6 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). In determining what process is due, we apply the factors specified by the Supreme Court in *Mathews v. Eldridge*:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

Cases decided by us are cited by Defendants, and previously by the district court in its order, to support the proposition that procedural due process does not require pre-deprivation notice and a hearing before impoundments. *See,*

*e.g.*, *Soffer v. City of Costa Mesa*, 798 F.2d 361, 363 (9th Cir. 1986); *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320, 1323-24 (9th Cir. 1982); *Stypmann v. City and County of San Francisco*, 557 F.2d 1338, 1342 (9th Cir. 1977). However, none of these cases is controlling in light of the unusual facts presented here. In these cases, the police clearly were acting within their legitimate caretaking functions. *See Goichman*, 682 F.2d at 1324 (recognizing "the government's interest in efficient and inexpensive towage of illegally parked automobiles"); *Stypmann*, 557 F.2d at 1343 ("The public interest in removing vehicles from streets and highways in the circumstances specified in the traffic code is also substantial, though differing in the various situations in which removal is authorized.").

The crucial factual differences that we confront here, as explained above, are that the Mirandas' vehicle, when seized to be impounded, was safely and securely in the driveway of their home, and Mr. Miranda, at all relevant times, had a valid registration for the vehicle and a valid driver's license. Defendants have not provided a legitimate caretaking purpose for the impoundment here.

**[13]** Impoundment of a vehicle left in a public place or a vehicle for which there is no licensed driver, although those circumstances are not presented here, presumably would not require pre-deprivation notice and a pre-seizure hearing because the burden of such procedures would vitiate the legitimate purposes of the impoundment. Impoundments in such cases are likely justified by the need to respond immediately to the hazard or public safety threat caused by the location of the vehicles, which would be incompatible with a requirement of notice and a hearing beforehand. However, the novel question, squarely presented in this case, of whether a pre-deprivation hearing is required for an impoundment from the driveway of the owners' home, cannot be resolved without more factual development and a more detailed analysis of the competing interests involved. Because Defendants have not

provided us with a legitimate caretaking purpose in impounding the car, the question whether a pre-deprivation hearing was required for the Mirandas' case cannot be properly determined on the record before us.[7] Therefore, the district court should determine on remand whether any legitimate caretaking purpose offered by Defendants outweighs the affected private interest of the Mirandas in uninterrupted possession of their car and the risk of erroneous deprivation.

## B

Assuming that pre-deprivation notice and a hearing is not required, we do not find that any due process violation resulted from the absence of a post-deprivation hearing to contest the validity of the impoundment in light of the opportunity for such a hearing that was given to the Mirandas.

[14] To establish Defendants' liability under section 1983, Plaintiffs "must demonstrate that action pursuant to official municipal policy of some nature caused a constitutional tort." *Berry v. Baca*, 379 F.3d 764, 767 (9th Cir. 2004). "In order to impose liability based on a policy of deliberate inaction, the plaintiff must establish: (1) that he [or she] possessed a constitutional right of which he [or she] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy was the moving force behind the constitutional violation." *Id.* (citations and internal quotation marks omitted).

The first question under this standard is whether the Mirandas were deprived of any constitutional right. In accord with the requirements of due process, the City has a policy of sending notices within forty-eight hours of an impound to the

---

[7]As explained in the previous section, the Defendants' deterrence rationale is insufficient justification for the impoundment of the Mirandas' vehicle from the Mirandas' driveway.

owners explaining their right to request a hearing to contest the impoundment. *See Scofield v. City of Hillsborough*, 862 F.2d 759, 764 (9th Cir. 1988) (holding that these "procedures ensure that any erroneous deprivation of an owner's vehicle will be slight, and satisfies due process concerns"). Plaintiffs contend that they requested a hearing in their letter to the City Hall, and that their request was ignored. The City presented evidence, by contrast, that it sent notice to the Mirandas of their right to a hearing, and that no request for a hearing was made. Further, the City submitted evidence that at the hearing on the traffic infractions, no issue was raised about the impoundment. The Mirandas replied that they did not submit a hearing request in response to the City's letter of notice because they felt that their prior Spanish-language letter made a request for a hearing. They also contended that Mr. Miranda later went to City Hall and "spoke with a woman about the tow who told him that he had no basis to complain about the tow." Possibly both sides acted in good faith and there was a misunderstanding because of language barriers.[8]

**[15]** Even assuming that the City did not respond to the requests for a hearing that the Mirandas made in a letter written in Spanish and made in person at City Hall, relief against the City cannot be granted in the absence of a policy of the City that caused or contributed to the assumed deprivation of a constitutional right. On this ground, the Plaintiffs' claim is defeated under the undisputed facts. Plaintiffs do not show that a municipal policy of deliberate inaction was the "moving force" behind the City's inaction towards the Mirandas' requests for a hearing. Rather, the absence of a hearing concerning the seizure on the undisputed facts was inadvertent and not as a result of a deliberate inaction under a City policy.

---

[8]We do not suggest that the City had a duty under the Constitution to interpret a Spanish language letter purportedly sent by the Mirandas and to ignore the lack of response by the Mirandas to the English language notice letter. We need not reach this question because we ground our opinion on the lack of evidence of a City policy contributing to denial of a hearing.

"In order for a municipality to be liable for a section 1983 violation the action alleged to be unconstitutional must implement a policy officially adopted by the municipality." *Scofield*, 862 F.2d at 765. Based on Plaintiffs' statement of facts and all reasonable inferences thereon, there is no evidence that the lack of response to Plaintiffs' letter was the result of a policy officially adopted by Defendants. In addition, construing Mr. Miranda's statement that he "spoke with a woman about the tow" in the most favorable light, it does not provide a basis for liability under section 1983. Because a denial of a hearing would be directly contrary to the City's official policy, any comment by the woman was not sufficient to establish the existence of a policy contrary to the City's written policy. We conclude that there was no genuine issue of material fact precluding the district court's grant of summary judgment to Defendants on the due process claim.

**[16]** On the record before us, we must conclude that there was no City policy to deprive Plaintiffs of a meaningful opportunity to contest the deprivation of their vehicle. Accordingly, the district court did not err in granting summary judgment on the issue of post-deprivation due process because the facts do not support a finding of liability even when they are viewed in a light most favorable to Plaintiffs.

## IV

Viewing the evidence in the light most favorable to Plaintiffs in their appeal of the summary judgment granted to Defendants, the impoundment must be considered an unreasonable seizure because the impoundment did not satisfy any acceptable purpose under the community caretaking doctrine. On remand, the district court may consider whether Defendants can offer evidence of a legitimate government purpose for the impoundment sufficient to render the seizure reasonable and to permit a deprivation of the property without prior notice and a hearing. On the issue of post-deprivation due process, we affirm the district court's summary judgment in

favor of Defendants. We accordingly reverse in part the district court's judgment and remand for further proceedings consistent with this disposition. Costs will be awarded to the plaintiffs-appellants.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**