Opinion by Judge PREGERSON; Dissent by Judge IKUTA.
*801 OPINION
PREGERSON, Circuit Judge:
Jesus Antonio Ramos Cervantes appeals the district court’s denial of his motion to suppress evidence found in his vehicle. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.
BACKGROUND
On March 25, 2009, Detective Todd Hankel of the Los Angeles Police Department and his team of narcotics detectives and officers were conducting surveillance of a suspected narcotics stash house in Paeoima, California. Around 1:20 P.M., Hankel observed an unidentified male arrive at, and enter, the suspected stash house. A few minutes later, the unidentified male left the suspected stash house with a large white box and placed the box inside his truck.
Detective Hankel learned from his police radio that the unidentified male drove to a nearby street and pulled over to the curb. Hankel heard over the police radio that the unidentified male got out of his truck with the white box, walked over to a white GMC Envoy, and handed the white box to a second unknown male who was later identified as Cervantes.
Twenty minutes later, Hankel heard over- his radio that Cervantes drove his GMC Envoy to a nearby liquor store. Hankel observed Cervantes exiting the liquor store with a purchase, getting inside his GMC Envoy, and driving away.
Shortly thereafter, Hankel heard over his radio that Cervantes drove on Interstate 5 and exited at San Fernando Mission Road. At this point, Hankel observed Cervantes drive through a residential neighborhood. It was Hankel’s belief that Cervantes did not take a direct route to his location. Hankel concluded that this was a “counter-surveillance” driving technique that indicated Cervantes was engaging in narcotics trafficking. At this point, according to Hankel, “probable cause existed to believe that Cervantes was engaging in drug trafficking and had a large quantity of narcotics in his possession.” Hankel, however, did not attempt to stop Cervantes.
At approximately 2:00 P.M., Hankel heard over his police radio that Cervantes drove to a residence on Polk Street. Hankel drove by the residence and saw Cervantes’s GMC Envoy parked on the street. Hankel heard over his radio that Cervantes remained inside the GMC Envoy for approximately five minutes, got out empty handed, and went inside an unknown residence.
At 5:30 P.M., Hankel heard over his police radio that Cervantes and an unknown male left the residence on Polk Street in a white BMW. Forty-five minutes later, Hankel heard that Cervantes and the unknown male returned in the white BMW to the residence on Polk Street. After about one hour, Cervantes returned to his GMC Envoy and went to the rear hatch area of the vehicle. A few minutes later, Hankel heard that Cervantes left the Polk Street residence in the GMC Envoy. At this point, Hankel asked a marked police unit to develop a lawful reason to conduct a traffic stop.
In response to Hankel’s request, Officer Sanchez and Officer Colley stopped Cervantes’s GMC Envoy after the vehicle failed to come to a complete stop behind the limit line at an intersection. Cervantes cleared the intersection and, according to Officer Colley, pulled to the curb appropriately when the officers stopped him. During the traffic stop, Sanchez and Colley asked Cervantes for his license, registration, and proof of insurance. Cervantes looked around, but was *802 unable to locate any of the documents. Colley asked Cervantes to step out of the car and performed a pat down search for weapons. Cervantes told Officer Sanchez that he had been arrested previously for driving under the influence, his license had been taken away, and he was currently attending classes. After finding no record of driver’s license under the name Cervantes provided, the officers concluded that Cervantes was driving without a license, and decided to impound and search his vehicle.
During the inventory search of the vehicle, Officer Colley located the white cardboard box in the rear passenger seat. A search of the box revealed that it contained approximately two kilograms of cocaine. After the discovery of cocaine, the officers arrested Cervantes for unlawfully transporting narcotics. Once Cervantes was transported to a police station, booked, and positively identified, Department of Motor Vehicles records confirmed that he did, in fact, have a valid driver’s license.
Cervantes moved to suppress the cocaine found in his GMC Envoy, claiming that officers searched his vehicle in violation of the Fourth Amendment. The district court denied Cervantes’s motion to suppress, finding that the officers had lawfully impounded Cervantes’s vehicle pursuant to California Vehicle Code §§ 12500(a), 14602.6(a)(1), 22651(h)(1), and LAPD policy, and that the impoundment and search were justified under the community care-taking exception to the Fourth Amendment’s warrant requirement. In the alternative, the district court found that the officers had probable cause to search Cervantes’s vehicle and, consequently, held that the search was valid under the automobile exception to the Fourth Amendment’s warrant requirement.
STANDARD OF REVIEW
We review the district court’s denial of a motion to suppress evidence de novo. United States v. Dorsey, 418 F.3d 1038, 1042 (9th Cir.2005), overruled on other grounds by Arizona v. Gant, 556 U.S. 332, 343 — 44, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). Underlying factual issues are reviewed for clear error. United States v. Summers, 268 F.3d 683, 686 (9th Cir.2001).
DISCUSSION
A. The Automobile Exception
Warrantless searches by law enforcement officers “are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.” Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Under the automobile exception to the Fourth Amendment’s warrant requirement, “[t]he police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained.” California v. Acevedo, 500 U.S. 565, 580, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). An officer will have probable cause to search if “there is a fair probability that contraband or evidence of a crime will be found in a particular place, ‘based on the totality of circumstances.’ ” Dawson v. City of Seattle, 435 F.3d 1054, 1062 (9th Cir.2006) (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).
Here, the government contends that the officers had probable cause to search Cervantes’s vehicle based on (1) Hankel’s conclusory statement that the box in Cervantes’s possession came from a “suspected narcotics stash house,” and (2) Hankel’s observation that Cervantes “did not take a direct route to his location.” As *803 explained below, these assertions fail to establish probable cause.
1. The Suspected Narcotics Stash House
The government asks us to place heavy reliance on Hankel’s conclusory statement that, based on Hankel’s training and experience, the white box in Cervantes’s possession came from a “suspected narcotics stash house.” But in the absence of any underlying facts as to why Hankel suspected the house was a “stash house,” this statement is entitled to little, if any, weight in the probable cause analysis.
“One of the themes which runs through the decisions on the Fourth Amendment probable cause requirement is that when the ultimate probable cause determination is made, whether by a magistrate when a warrant is sought or upon a motion to suppress evidence obtained without a warrant, mere conclusions will not suffice.” 2 Wayne Lafave, Search and Seizure: A Treatise on the Fourth Amendment § 3.5(e), at 297 (4th ed. 2004). See, e.g., Illinois v. Gates, 462 U.S. at 239, 103 S.Ct. 2317 (noting that “wholly conclusory” statements of officers are insufficient to establish probable cause); United States v. Ventresca, 380 U.S. 102, 108-09, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) (noting that “purely conclusory” statements of officers, without detailing any of the underlying circumstances, will be insufficient to establish probable cause); Nathanson v. United States, 290 U.S. 41, 47, 54 S.Ct. 11, 78 L.Ed. 159 (1933) (noting that an officer’s “mere affirmance of suspicion or belief without disclosure of supporting facts or circumstances” is insufficient to establish probable cause).
In United States v. Thomas, we noted that a conclusory allegation by law-enforcement that a particular house was a suspected narcotics stash house, was entitled to little (if any) weight in determining whether officers had satisfied the lower reasonable suspicion standard required to stop a vehicle leaving the house. 211 F.3d 1186, 1189-90 (9th Cir.2000). We explained that the conclusory allegation, without any foundational facts, was akin to an anonymous tip and, consequently, was entitled to little weight. Id. at 1190.
Here, as in Thomas, Hankel’s statements amount to nothing more than conclusory assertions. Hankel failed to provide any underlying facts as to why he, or any other officers, suspected the house was a “narcotics stash location.” While Hankel’s training and experience are factors to be considered, “it is incumbent upon the arresting or searching officer to explain the nature of his expertise or experience and how it bears upon the facts which prompted the officer to arrest or search.” 2 Wayne Lafave, Search and Seizure: A Treatise on the Fourth Amendment § 3.2(c), at 45 (4th ed. 2004) (internal quotation marks omitted). Conclusory statements and a general claim of expertise will not suffice. Id.; Thomas, 211 F.3d at 1189-92.
2. Cervantes’s Failure to Take a Direct Route to His Location
The government also urges us to rely on Hankel’s observation that Cervantes “did not take a direct route to his location.” Cervantes’s unremarkable driving practices, however, fall short of any indicia of criminal activity.
In United States v. Del Vizo, we found that officers had probable cause to arrest Del Vizo for narcotics trafficking after they received an anonymous tip and observed Del Vizo and his associates over the course of five days. 918 F.2d 821, 822 (9th Cir.1990). During their five days of surveillance, officers observed Del Vizo and his associates make multiple trips to vari *804 ous Western Union Offices, engage in counter-surveillance driving techniques (which included circling the area, U-turns, speeding, and pulling over to the curb to let traffic go by), frequently check their rear view mirrors, use payphones, and drive in tandem. Id. at 822-23, 826. In reviewing the aforementioned facts, we noted that the question of probable cause was a “close one,” but nevertheless found that officers had probable cause to arrest Del Vizo. Id. at 827.
In contrast to the myriad driving and travel tactics cited in Del Vizo, the observations of officers in this case were exceedingly limited. Specifically, Hankel’s suspicions were based in large part on the observation that Cervantes “did not take a direct route to his location” because Cervantes exited the freeway and drove through a residential neighborhood. Officers observed none of the counter-surveillance techniques present in Del Vizo, and Hankel’s declaration — upon which the district court relies — provides no further indication as to why Cervantes’s driving behavior should be considered suspicious.
Much of the activity described by Hankel is consistent with perfectly innocent behavior. For example, Hankel notes in his declaration that “[he] heard over [his] police radio that Cervantes drove to a nearby liquor store and parked in front. [He] saw Cervantes come out of the liquor store with a purchase, get inside the GMC, and start driving again.” While seemingly innocent conduct may carry a different message to a trained officer, Del Vizo, 918 F.2d at 827, it is difficult to imagine what inference a trained officer could draw from this activity, other than that Cervantes entered a liquor store and exited with a purchase.
In sum, Hankel’s observations regarding Cervantes’s benign travel tactics, when coupled with Hankel’s conclusory statement about the box in Cervantes’s possession, are insufficient to establish probable cause. See Thomas, 211 F.3d at 1192. This is only reinforced by Hankel’s request that Officers Colley and Sanchez develop a lawful reason to stop Cervantes. Had probable cause existed to stop Cervantes, there would have been no need to develop an independent reason to pull Cervantes over. Thus, the district court erred when it held that the search was valid under the automobile exception to the Fourth Amendment’s warrant requirement.
B. The Community Caretaking Exception
We next consider whether the impoundment and subsequent inventory search of Cervantes’s vehicle were justified by the community caretaking exception to the Fourth Amendment’s warrant requirement. Cervantes contends the government failed to meet its burden of establishing that the impoundment of his vehicle was justified under this exception. We agree.
Because warrantless searches and seizures are per se unreasonable, the government bears the burden of showing that a warrantless search or seizure falls within an exception to the Fourth Amendment’s warrant requirement. United States v. Hawkins, 249 F.3d 867, 872 (9th Cir.2001). Under the community caretaking exception, “police officers may impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic.” Miranda v. City of Cornelius, 429 F.3d 858, 864 (9th Cir.2005) (internal quotation marks omitted). Once a vehicle has been legally impounded, the police may conduct an inventory search, as long as it conforms to the standard procedures of the local police department. South Dakota v. Opperman, 428 U.S. 364, 375-76, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); see *805 also United States v. Wanless, 882 F.2d 1459, 1463 (9th Cir.1989). However, “an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence.” Florida v. Wells, 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990).
In Miranda v. City of Cornelius, we considered “whether probable cause to believe that the driver committed a traffic violation is sufficient justification by itself to make the impoundment of the vehicle reasonable under the Fourth Amendment.” 429 F.3d at 864. Quoting the Supreme Court’s decision in Opperman, we answered in the negative, concluding that the reasonableness of the impoundment depended on “whether the impoundment fits within the ‘authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience....’” Id. (quoting Opperman, 428 U.S. at 369, 96 S.Ct. 3092). In other words, “a valid caretaking purpose” is required. Id.
Following both Opperman and our decision in Miranda, we have held that
[Wjarrantless inventory searches of vehicles are lawful only if conducted pursuant to standard police procedures that are aimed at protecting the owner’s property and at protecting the police from the owner charging them with having stolen, lost, or damaged his property. Additionally, a vehicle can be impounded under [California Vehicle Code] § 22651(h)(1) only if impoundment serves some “community caretaking function.”
United States v. Caseres, 533 F.3d 1064, 1074 (9th Cir.2008) (internal citation omitted). In Caseres, we found the inventory search to be unconstitutional — even though the driver was driving on a suspended license — because the government presented no evidence that the impoundment served any caretaking ' function. Id. at 1075. As we stated in Caseres, if “the government fail[s] to establish a community caretaking function for the impoundment” then it “fail[s] to establish the constitutional reasonableness of the seizure and subsequent inventory search.” Id.
Neither Sanchez nor Colley provided any testimony that Cervantes’s vehicle was parked illegally, posed a safety hazard, or was vulnerable to vandalism or theft. To the contrary, Officer Colley testified that Cervantes appropriately pulled over to the curb when he was stopped in a residential neighborhood. While it is true that Cervantes’s vehicle was not in close proximity to his home at the time it was impounded, cf. Caseres, 533 F.3d at 1075 (noting that defendant’s vehicle was two houses away from his home), the government presented no evidence that the vehicle would be vulnerable to vandalism or theft if it were left in its residential location, or that it posed a safety hazard, and thus failed to meet its burden to show that the community caretaking exception applied. Id.; Hallstrom v. City of Garden City, 991 F.2d 1473, 1477 n. 4 (9th Cir.1993) (upholding the towing of a car from a public parking lot, not a residential street, under the community caretaking exception).[1]
*806 Nor can the government justify the impoundment by simply citing to sections of the California Vehicle Code and the LAPD’s policy on impoundments and inventory searches. The fact that an impoundment complies with a state statute or police policy, by itself, is insufficient to justify an impoundment under the community caretaking exception. See Miranda, 429 F.3d at 864 (“We begin with the premise, apparently not recognized by the Defendants, that the decision to impound pursuant to the authority of a city ordinance and state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment....”). “[T]he decision to impound a vehicle after the driver has violated a vehicle regulation must consider the location of the vehicle, and whether the vehicle was actually 'impeding traffic or threatening public safety and convenience’ on the streets, such that impoundment was warranted.” Id. at 865 (quoting Opperman, 428 U.S. at 369, 96 S.Ct. 3092). No such showing was made here.
Moreover, it is not clear that Officers Colley and Sanchez even complied with the California Vehicle Code when they impounded Cervantes’s vehicle. According to California Vehicle Code § 22651(h)(1), an officer may impound and remove a vehicle “[w]hen an officer arrests a person driving or in control of a vehicle for an alleged offense and the officer is, by this code or other law, required or permitted to take, and does take, the person into custody.” Cal. Vehicle Code § 22651(h)(1) (emphases added). Pursuant to California Vehicle Code § 14602.6(a)(1), “[w]henever a peace officer determines that a person was driving a vehicle while his or her driving privilege was suspended or revoked ... the peace officer may either immediately arrest that person and cause the removal and seizure of that vehicle or, if the vehicle is involved in a traffic collision, cause the removal and seizure of the vehicle without the necessity of arresting the person----” Cal. Vehicle Code § 14602.6(a)(1) (emphases added). While the purported reason for the impoundment of Cervantes’s car was his alleged driving without a license, in violation of California Vehicle Code § 12500(a), according to both officers, Cervantes was arrested and taken into custody only after the vehicle was impounded and the inventory search had already resulted in the discovery of narcotics.
Finally, local police department policies that give officers discretion to choose whether to impound a vehicle are not improper so long as police discretion is *807 exercised “according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.” Colorado v. Bertine, 479 U.S. 367, 375, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); see also Whren v. United States, 517 U.S. 806, 811— 12, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (“[W]e [have] never held, outside the context of inventory search or administrative inspection ... that an officer’s motive invalidates objectively justifiable behavior under the Fourth Amendment”) (emphasis added); United States v. Taylor, 636 F.3d 461, 465 (8th Cir.2011) (“[The officer’s] testimony leads us to conclude that the search was conducted because police believed they would find evidence of narcotics in [the defendant’s] truck, and thus the inventory was merely a pretext for an investigatory search.”).
Here, Cervantes argues that the community caretaking exception does not apply because the impoundment and subsequent inventory search of his vehicle was a pretext to search for narcotics. We agree. We reach this conclusion based on the fact that Officers Sanchez and Colley stopped Cervantes’s vehicle at the direction of Detective Hankel, who was investigating Cervantes for narcotics trafficking. Officers Sanchez and Colley both stated that LAPD narcotics detectives had informed them that they were investigating suspected narcotics trafficking by Cervantes and that they were asked to assist with the investigation by conducting a lawful traffic stop of Cervantes’s vehicle. The happy accident of not finding Cervantes’s driver’s license — the existence of a valid license was confirmed shortly thereafter — cannot excuse the officers’ investigatory motive for the vehicle impoundment and inventory search. See Wells, 495 U.S. at 4, 110 S.Ct. 1632 (“[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence.”).
In sum, on this record, the impoundment of Cervantes’s vehicle was not justified by the community caretaking exception to the Fourth Amendment’s warrant requirement. The district court’s contrary holding was error.
CONCLUSION
Evidence seized in violation of the Fourth Amendment, including any “fruit of the poisonous tree,” may not be used in a criminal proceeding against the victim of the illegal search and seizure. Wong Sun v. United States, 371 U.S. 471, 487, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Mapp v. Ohio, 367 U.S. 643, 656, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Accordingly, we REVERSE the district court’s denial of Cervantes’s motion to suppress and REMAND for further proceedings consistent with this opinion.

. To support the dissent's argument that the government has met its heavy burden, the dissent refers to a photograph that depicts nothing more than a wide street in a residential neighborhood and an illegible sign on the side of the street. The focus of this photograph is not where the government stopped Cervantes, which Officer Colley testified was "at the top of [the] hill.’' Rather, the focus is on the Polk Street / Laurel Canyon Boulevard intersection. In fact, the photograph does not even show where the top of the hill is. Based solely on this inconclusive photograph, the dissent infers that "[a]n abandoned car in this *806 location would have been a hazard to other drivers, as well as vulnerable to damage, vandalism, or theft.” Dissent at 809. The government, however, has failed to refer to, cite, or even mention the attached exhibit in any of its briefs. In fact, the government concedes that "the record is not developed as to whether defendant's vehicle was actually impeding traffic or posing a safety hazard when officers conducted their traffic stop....” Thus, the government has waived any argument that this photograph demonstrates that the officers could have legally impounded Cervantes’s vehicle as a safety hazard. United States v. Vizcarra-Martinez, 66 F.3d 1006, 1011 (9th Cir.1995). Even were the argument not waived, this single photograph is not enough to meet the government’s heavy burden to establish that the seizure of Cervantes's vehicle was warranted. United States v. Hawkins, 249 F.3d 867, 872 (9th Cir.2001) (holding that the "burden is on the Government to persuade the district court that a seizure comes under one of a few specifically established exceptions to the warrant requirement” (internal quotation marks and citation omitted)); United States v. Howard, 828 F.2d 552, 555 (9th Cir.1987) (describing this as a "heavy” burden and one which can not be "satisfied by speculation”). "It is not our role to engineer a path for the Government to meet that burden....” United States v. Rodgers, 656 F.3d 1023, 1028 n. 5 (9th Cir.2011).