**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| RAFAEL MATEOS SANDOVAL; SIMEON AVENDANO RUIZ, individually and as class representatives, *Plaintiffs-Appellees*, | No. 16-16122 |
| | D.C. No. 3:11-cv-05817-TEH |

RAFAEL MATEOS SANDOVAL;
SIMEON AVENDANO RUIZ,
individually and as class
representatives,

        *Plaintiffs-Appellees*,

v.

COUNTY OF SONOMA; SONOMA
COUNTY SHERIFF'S OFFICE; STEVE
FREITAS,

        *Defendants*,

and

CITY OF SANTA ROSA; SANTA ROSA
POLICE DEPARTMENT; TOM
SCHWEDHELM,

        *Defendants-Appellants.*

No. 16-16122

D.C. No.
3:11-cv-05817-
TEH

RAFAEL MATEOS SANDOVAL;
SIMEON AVENDANO RUIZ,
individually and as class
representatives,

*Plaintiffs-Appellees*,

v.

COUNTY OF SONOMA; SONOMA
COUNTY SHERIFF'S OFFICE; STEVE
FREITAS,

*Defendants-Appellants*,

and

CITY OF SANTA ROSA; SANTA ROSA
POLICE DEPARTMENT; TOM
SCHWEDHELM,

*Defendants.*

No. 16-16131

D.C. No.
3:11-cv-05817-
TEH

RAFAEL MATEOS SANDOVAL;
SIMEON AVENDANO RUIZ,
individually and as class
representatives,
*Plaintiffs-Appellants*,

v.

COUNTY OF SONOMA; SONOMA
COUNTY SHERIFF'S OFFICE; STEVE
FREITAS; CITY OF SANTA ROSA;
SANTA ROSA POLICE DEPARTMENT;
TOM SCHWEDHELM,
*Defendants-Appellees*.

No. 16-16132

D.C. No.
3:11-cv-05817-
TEH

OPINION

Appeal from the United States District Court
for the Northern District of California
Thelton E. Henderson, Senior District Judge, Presiding

Argued and Submitted September 11, 2018
San Francisco, California

Filed December 21, 2018

Before:  J. Clifford Wallace, Johnnie B. Rawlinson,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Wallace;
Concurrence by Judge Watford

# SUMMARY[*]

## Civil Rights

The panel affirmed the district court's summary judgment and its denial of class certification in an action brought pursuant to 42 U.S.C. § 1983 and state law by two plaintiffs whose vehicles were impounded for 30 days because they had not been issued California driver's licenses.

California Vehicle Code § 14602.6(a)(1) provides that a peace officer may impound a vehicle for 30 days if the vehicle's driver has never been issued a driver's license. California authorities interpreted section 14602.6 as applying to individuals who had never been issued a California driver's license. Applying this interpretation, law enforcement officials impounded plaintiffs' vehicles for 30-days even though plaintiffs attempted to have friends with valid California licenses take possession of the vehicles.

Citing *Brewster v. Beck*, 859 F.3d 1194, 1196–97 (9th Cir. 2017), the panel first noted that 30-day impounds under section 14602.6 are seizures for Fourth Amendment purposes and that the only issue in this case was whether the impounds were reasonable under the Fourth Amendment. The panel held that although the state's interest in keeping unlicensed drivers off the road provided a "community caretaking" exception to the Fourth Amendment, the application of the exception turned on the facts and

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

circumstances of each case.  The panel determined that defendants had failed to provide any justifications for the impounds other than general arguments that such impounds were justified as a deterrence or penalty.  The panel rejected these arguments, at least on the facts of this case, and held that the district court did not err by granting summary judgment for plaintiffs on their Fourth Amendment claims.

The panel affirmed the district court's summary judgment for plaintiffs on their claim that the County of Sonoma and the City of Santa Rosa were liable for money damages as final policymakers who caused the constitutional violations.  The panel held that the impoundment of plaintiffs' vehicles was not caused by state law, but by the defendants' policies of impounding vehicles when the driver had never been issued a California driver's license.

The panel affirmed the district court's denial of class certification for lack of commonality and typicality.  The panel held that because a 30-day impoundment is only unconstitutional when it continues in the absence of a warrant or any exception to the warrant requirement, the district court correctly concluded that members of the proposed classes would not be able to establish a Fourth Amendment violation based solely on the 30-day impounds. The district court further did not abuse its discretion by finding the plaintiffs atypical.

The panel affirmed the district court's summary judgment in favor of defendants on the California Bane Act claim.  The panel held that under the circumstances of this case, it was legally unclear whether the 30-day impounds were "seizures" at all within the meaning of the Fourth Amendment until this Court issued a decision in *Brewster* in 2017.  The plaintiffs' vehicles were impounded in 2011, well

before this date, and at that point the County and City could not have had the requisite specific intent to violate the plaintiffs' Fourth Amendment rights.

Concurring, Judge Watford stated that California Vehicle Code § 14602.6 is constitutionally deficient not because it runs afoul of the Fourth Amendment, as the Court held in *Brewster*, but because the post-seizure hearing it affords does not comply with the Due Process Clause of the Fourteenth Amendment.

---

**COUNSEL**

Timothy T. Coates (argued) and Alison M. Turner, Greines Martin Stein & Richland LLP, Los Angeles, California; Robert L. Jackson, Assistant City Attorney, City Attorney's Office, Santa Rosa, California; for Defendants-Appellants/Cross-Appellees City of Santa Rosa, Santa Rosa Polic Department, and Tom Schwedhelm.

Anne L. Keck (argued), Keck Law Offices, Santa Rosa, California; Richard W. Osman, Bertrand Fox Elliott Osman & Wenzel, San Francisco, California; for Defendants-Appellants/Cross-Appellees County of Sonoma, Sonoma County Sheriff's Office, and Steve Freitas.

Donald W. Cook (argued), Los Angeles, California; Alicia Roman, Law Office of Alicia Roman, Santa Rosa, California; for Plaintiffs-Appellees/Cross-Appellants.

Morris G. Hill, Senior Deputy; Thomas E. Montgomery, County Counsel; Office of County Counsel, San Diego, California; for Amicus Curiae California State Association of Counties.

## OPINION

WALLACE, Circuit Judge:

California state law provides that a peace officer may impound a vehicle for 30 days if the vehicle's driver has never been issued a driver's license. Relying on this statute, local authorities in California impounded two vehicles because their drivers had not been issued California driver's licenses. The drivers then sued the municipalities under 42 U.S.C. § 1983 and state civil rights law, contending that the impounds violated the Fourth Amendment. The district court granted summary judgment to the defendants on plaintiffs' state law claims, denied class certification, and granted summary judgment to the plaintiffs on their section 1983 claims. The defendants now appeal from the district court's summary judgment on the section 1983 claims; the plaintiffs cross-appeal from the denial of class certification and summary judgment on the state law claims. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

### I.

California Vehicle Code § 14602.6(a)(1) provides:

> Whenever a peace officer determines that a person was . . . driving a vehicle without ever having been issued a driver's license, the peace officer may either immediately arrest that person and cause the removal and seizure of that vehicle or, if the vehicle is involved in a traffic collision, cause the removal and seizure of the vehicle without the necessity of arresting the person in accordance with [other law]. A vehicle so impounded shall be impounded for 30 days.

Drivers whose vehicles are impounded under this section are entitled to notice and a storage hearing, at which they may challenge the impoundment. *Id.* § 14602.6(a)(2). The storage agency must release the vehicle to the driver if the seizure was unauthorized. *Id.* § 14602.6(d)(1)(D).

Section 14602.6 does not define "driver's license." Following a similar practice of local officials throughout the state, the Sonoma County Sheriff's Office interpreted section 14602.6 as applying to individuals who had never been issued a California driver's license. The County impounded drivers' vehicles for 30 days—pursuant to the statute—when they had never been issued a California driver's license, even if they had a license from another jurisdiction.

On January 27, 2011, a County deputy sheriff stopped a truck driven by Rafael Mateos Sandoval for a minor traffic infraction. Upon learning that Sandoval did not have a California driver's license, the deputy sheriff decided to impound his truck under section 14602.6, even though Sandoval had a valid driver's license from Mexico and his friend had a California driver's license and offered to take possession of the vehicle. Sandoval sought to regain possession of his truck, but the officer conducting the storage hearing denied Sandoval's request, on the basis that his license was invalid for California residents and that the tow and storage was authorized by state law and local policy. Sandoval appealed, but County officials again denied his request, stating that "the tow and impound . . . were done legally and within policy." Sandoval then filed a complaint with the Sheriff's office, and that office again affirmed that "the deputies acted properly, in accordance with state laws and our [Sonoma County Sheriff's Office] policies." Sandoval did not regain possession of his vehicle until the

30 days expired, when he paid the storage fees and a friend with a California driver's license took possession of the truck.

Officials in the City of Santa Rosa adopted the same interpretation as the County, and impounded vehicles when the drivers had never been issued a California driver's license. On September 1, 2011, Santa Rosa police officers stopped Simeon Ruiz at a checkpoint, where they learned that he did not have a California driver's license. Although Ruiz had an expired Mexico driver's license and a friend with a valid California driver's license who could have taken possession of the vehicle, the officers decided to impound Ruiz's vehicle under section 14602.6. Ruiz unsuccessfully attempted to have his truck returned the following day, and the official conducting his storage hearing later denied his request after being shown Ruiz's Mexico driver's license. Ruiz did not regain possession of his vehicle until the 30 days expired and he paid the storage fees.

Sandoval and Ruiz sued the County and City asserting claims under 42 U.S.C. § 1983 and the California Bane Act, Cal. Civil Code § 52.1, for the alleged violation of their Fourth Amendment rights. Early in the case, the parties stipulated to a determination of whether the City's actions violated Ruiz's Fourth Amendment rights, assuming the initial seizure was lawful. The district court granted summary judgment to Ruiz, holding that the 30-day impound of his vehicle was unreasonable and therefore unconstitutional. The district court held in a later order that the impound of Sandoval's vehicle was also unreasonable, and granted summary judgment to him as well.

Sandoval and Ruiz then sought to certify a class, with themselves as class representatives, for all individuals who had their vehicles impounded without a warrant by the

County and City for driving without having been issued a California driver's license. They also sought to certify subclasses for individuals who had been issued foreign licenses. The district court denied class certification, holding that the classes were numerous but the subclasses were not, and that the plaintiffs had failed to show commonality and typicality for their proposed classes.

Sandoval and Ruiz also sought to hold the County and City liable for money damages as the final policymakers who caused the constitutional violations. The defendants opposed, arguing that section 14602.6 permits impoundment when the driver has never been issued a California driver's license, and that they could not be liable for enforcing state law. The district court concluded that section 14602.6 did not permit impoundment for drivers who had previously been issued foreign driver's licenses, and that the municipalities' policies interpreting section 14602.6 to do so—contrary to the law—thus caused the constitutional violations.

Sandoval and Ruiz also sought summary judgment on their state law claims, arguing that the Fourth Amendment violations established Bane Act liability. The County and City also moved for summary judgment, arguing that the constitutional violations were not sufficiently egregious for liability to attach. The district court concluded that the Bane Act requires threats, intimidation, or coercion apart from that inherent in the seizure, and, finding none in this case, granted summary judgment to the defendants. The district court entered final judgment against the County and City for approximately $4,000 each.

The County appeals, arguing that the district court erred by concluding that it violated the Fourth Amendment and by holding it liable as a final policymaker. The City appeals,

asserting the same arguments. The plaintiffs cross-appeal, asserting that the district court abused its discretion by denying class certification and erred by granting summary judgment to the defendants on their Bane Act claims.

## II.

We review summary judgment de novo. *Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011). "We review *de novo* an ultimate holding that there was, or was not, a seizure in violation of the fourth amendment." *Martinez v. Nygaard*, 831 F.2d 822, 826 (9th Cir. 1987). We review summary judgment on a *Monell* claim de novo. *Truth v. Kent Sch. Dist.*, 542 F.3d 634, 641 (9th Cir. 2008), *overruled on other grounds by Los Angeles Cty. v. Humphries*, 562 U.S. 29, 33–34 (2010).

We review the denial of class certification for abuse of discretion. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1164 (9th Cir. 2014). "A class certification order is an abuse of discretion if the district court applied an incorrect legal rule or if its application of the correct legal rule was based on a 'factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record.'" *Id.* (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013)). We review summary judgment on state law claims de novo. *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1177 (9th Cir. 2016).

## III.

42 U.S.C. § 1983 creates a claim for parties who suffer a violation of their federal rights by a person acting under color of state law. To prevail on a section 1983 claim based on the Fourth Amendment, a plaintiff must show that the state actor's conduct was an unreasonable search or seizure.

*Mendez v. Cty. of Los Angeles*, 897 F.3d 1067, 1074–75 (9th Cir. 2018). Moreover, where the plaintiff seeks to hold a municipality liable, the plaintiff must show that the Fourth Amendment violation was caused by the municipality's policy, custom or usage. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). The County and City argue that the district court erred in both decisions because the warrantless impounds did not violate the Fourth Amendment and, even if they did, because the municipalities were only enforcing state law. We address each argument in turn.

A.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. We have previously held that 30-day impounds under section 14602.6 are seizures for Fourth Amendment purposes. *Brewster v. Beck*, 859 F.3d 1194, 1196–97 (9th Cir. 2017). Accordingly, the only issue in this case is whether the impounds here were "reasonable" under the Fourth Amendment.

Generally, "[a] seizure conducted without a warrant is *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." *Id.* at 1196 (quoting *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001)). The parties do not dispute that neither the County nor City officials who impounded the plaintiffs' vehicles had warrants authorizing the impound, so we begin from the premise that the impounds were unreasonable. We then examine whether any "specifically established and well-delineated exceptions" to the warrant requirement apply that would make the impounds reasonable. *See id.*

The County argues that such an exception exists because we should categorically balance California's interest in deterring unlicensed drivers against drivers' interests in maintaining possession of their vehicles. But as explained in *Brewster*, the state's interest in keeping unlicensed drivers off the road is governed by the "community caretaking" exception, which permits government officials to remove vehicles from the streets when they "jeopardize public safety and the efficient movement of vehicular traffic." *Id.* (quoting *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012)). Whether this exception applies turns on the facts and circumstances of each case. *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005). Accordingly, the community caretaking exception does not categorically permit government officials to impound private property simply because state law does. *See id.* ("[T]he decision to impound pursuant to authority of a city ordinance and state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment").

Moreover, the County's framing of the issue is incorrect. Even if we were to balance California's interest against all California driver's interests, as is sometimes appropriate, *see Hudson v. Palmer*, 468 U.S. 517, 538 (1984) (O'Connor, J., concurring), the County would still be wrong to rely on a deterrence or administrative penalty rationale to support California's interests. *See Brewster*, 859 F.3d at 1196 ("The exigency that justified the seizure vanished once the vehicle arrived in impound and Brewster showed up with proof of ownership and a valid driver's license"); *Miranda*, 429 F.3d at 866 ("The need to deter a driver's unlawful conduct is by itself insufficient to justify a tow under the 'caretaker' rationale"). Whatever force those rationales may have in the forfeiture context, where a court approves the deprivation,

*see Bennis v. Michigan*, 516 U.S. 442, 452 (1996), they do not permit the continued warrantless seizure of a vehicle once the community caretaking function is discharged. *Miranda*, 429 F.3d at 866. The County having failed to raise any other reason why the warrantless impound of Sandoval's vehicle might satisfy the Fourth Amendment, we hold that the district court did not err in granting summary judgment to Sandoval on this issue.

The City relies on similar arguments, which we likewise reject as foreclosed by our case law. *See Brewster*, 859 F.3d at 1196–97; *Miranda*, 429 F.3d 864–66. The City comes closer to the mark with its argument that, even if section 14602.6 impounds are not per se reasonable, the impound of Ruiz's truck in particular did not violate the Fourth Amendment. As we intimated in *Brewster*, a prolonged seizure may not violate the Fourth Amendment if the government retains justification for the seizure after the initial justification dissipates. *See* 859 F.3d at 1197 ("A seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. Thereafter, the government must cease the seizure or secure a new justification"); *see also United States v. Sullivan*, 797 F.3d 623, 634–35 (9th Cir. 2015) (concluding that 21-day warrantless seizure was reasonable under the totality of the circumstances). Thus, the impoundment of Ruiz's vehicle might nonetheless be reasonable if the City had a justification for continuing to seize the vehicle once it was safely towed.

The City's argument fails, however, because no such justification exists. Once Ruiz was able to provide a licensed driver who could take possession of the truck, the City's community caretaking function was discharged. *Cf. Brewster*, 859 F.3d at 1196 ("The exigency that justified the

seizure vanished once the vehicle arrived in impound and Brewster showed up with proof of ownership and a valid driver's license"). The City argues that its continued possession was necessary because Ruiz did not have a valid driver's license. But, even if Ruiz could not have driven his vehicle on California's roads, he could have lent the truck to a friend, sold the truck, used it for storage, or taken any other innumerable possible actions that a property owner can lawfully take with his or her property. The City has not provided us with any reason that a government may warrantlessly interfere with private possessory interests in this way, beyond its general argument that such impounds are justified as a deterrent or penalty. Because we reject those arguments, at least on the facts of this case, the district court did not err by entering summary judgment in favor of Ruiz.

## B.

A municipality cannot be held vicariously liable under section 1983 for the actions of its officers. *Monell*, 436 U.S. at 691. Instead, a plaintiff who claims to be injured by a municipality's unconstitutional actions must show that those actions constituted government policy. *Id.* The district court held that the County and City had a policy of impounding vehicles for 30 days that caused the Fourth Amendment violations, and thus that *Monell* liability attached.

On appeal, the County and City do not dispute that they had a policy of impounding vehicles for 30 days when the drivers had never been issued a California driver's license. Instead, they argue that the 30-day impounds were mandated by state law, and that they cannot be liable under section 1983 for enforcing state law. However, California Vehicle Code § 310 defines "driver's license" as "a valid license to drive the type of motor vehicle or combination of vehicles

for which a person is licensed under this code or by a foreign jurisdiction." California Vehicle Code § 100 provides: "Unless the provision or context otherwise requires, these definitions shall govern the construction of this code." Accordingly, a driver who has been issued a driver's license in a foreign jurisdiction for the type of vehicle seized has not driven that vehicle "without ever having been issued a driver's license," and section 14602.6 does not authorize impounding their vehicles. The impoundment of plaintiffs' vehicles was thus not caused by state law, but by the defendants' policies of impounding vehicles when the driver had never been issued a California driver's license. The district court did not err by granting summary judgment to the plaintiffs on this issue.

The City argues at great length that section 14602.6 applies to any driver who has never been issued a California driver's license. But the City's arguments cannot overcome the plain language of section 310, which includes licenses by a foreign jurisdiction. *See People v. Watson*, 171 P.3d 1101, 1104 (Cal. 2007) ("We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent"). Moreover, conspicuously absent from the City's briefs are any California court decisions applying its definition, which would change our analysis. *See Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007) ("[W]hen . . . a federal court is required to apply state law, and . . . there is no relevant precedent from the state's highest court, but . . . there *is* relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's

supreme court likely would not follow it" (emphasis in original)). In fact, at least one California court has stated that the district court's interpretation may have merit. *Thompson v. City of Petaluma*, 231 Cal. App. 4th 101, 110 (2014).

Given the plain meaning of section 14602.6, the County's argument that state law caused the violation of Sandoval's rights is without merit. We thus need not decide whether the County's and City's policies of towing pursuant to section 14602.6 could have given rise to liability under *Monell* even if the statute had authorized the impoundment of the plaintiffs' vehicle. *See Evers v. County of Custer*, 745 F.2d 1196, 1203 (9th Cir. 1984) (upholding *Monell* liability over county's argument that "it was merely acting according to state law, rather than carrying out County policy," because policy was discretionary); *see also California Highway Patrol v. Superior Court*, 162 Cal. App. 4th 1144, 1148 (2008) (interpreting section 14602.6 as making impoundment discretionary).

The County additionally argues that the district court erred because it failed to find that the County was deliberately indifferent to Sandoval's Fourth Amendment rights. We have reviewed the record of the County's motion before the district court and it does not appear that this argument was presented. As such, this issue is forfeited. *See United States v. Flores-Payon*, 942 F.2d 556, 558 (9th Cir. 1991) ("Issues not presented to the trial court cannot generally be raised for the first time on appeal").

IV.

Federal Rule of Civil Procedure 23(a) provides that members of a class may sue as representatives for that class, but only if four requirements are satisfied: numerosity, commonality, typicality, and adequacy. Commonality

requires the plaintiff to show that the class members' claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). The district court declined to certify plaintiff's proposed classes for lack of commonality and typicality.

"We review a district court's class certification for abuse of discretion." *Sali v. Corona Reg'l Med. Ctr.*, __ F.3d __ No. 15-56460, 2018 WL 6175617, at *3 (May 3, 2018), *as amended* Nov. 27, 2018 (quoting *Parra v. Bashas', Inc.*, 536 F.3d 975, 977 (9th Cir. 2008)). "A district court applying the correct legal standard abuses its discretion only if it (1) relies on an improper factor, (2) omits a substantial factor, or (3) commits a clear error of judgment in weighing the correct mix of factors." *Id.* (internal quotation marks and citation omitted). We conclude that the district court did not abuse its discretion.

The plaintiffs argue that because warrantless seizures are per se unreasonable, every member of their proposed classes could establish liability solely because their vehicles were impounded for 30 days. The plaintiffs thus argue that the district court committed a legal error requiring reversal. But, as this opinion makes clear, a 30-day impound does not necessarily violate the Fourth Amendment. Instead, such a

prolonged seizure is only unconstitutional when it continues in the absence of a warrant or any exception to the warrant requirement. *See Brewster*, 859 F.3d at 1197. Thus, the district court correctly concluded that members of the proposed classes would not be able to establish a Fourth Amendment violation based solely on the 30-day impound. The district court then weighed whether class certification would be appropriate in light of the facts that (1) the plaintiffs had licensed drivers who were able to pick up their cars, whereas other drivers may not have, (2) the plaintiffs were forced to wait the full 30 days, whereas other drivers may not have been, and (3) that other plaintiffs may have never been licensed in a foreign jurisdiction, whereas plaintiffs were, and concluded that the plaintiffs were atypical. This determination does not reflect legal error or a "clear error in judgment," and the plaintiffs do not argue that the district court failed to appropriately consider the relevant factors. *See Sali*, 2018 WL 6175617, at *3. The district court therefore did not abuse its discretion by finding the plaintiffs atypical. In light of this conclusion, we need not reach whether the district court erred by determining the plaintiffs' proposed class lacked commonality.

## V.

The California Bane Act creates a cause of action against a person if that person "interferes by threat, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States." Cal. Civ. Code § 52.1. The California Supreme Court has not definitively interpreted the elements of this claim, and both we and the California Courts of Appeal have struggled to articulate clearly when Bane Act liability attaches. *Compare Lyall v. City of Los Angeles*, 807 F.3d 1178, 1196 (9th Cir. 2015)

(concluding that plaintiff in search and seizure case must allege coercion apart from that inherent in detention); *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 69 (2015) (same), *with Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1044 (9th Cir. 2018) (holding that plaintiff must allege specific intent to violate arrestee's rights); *Cornell v. City & Cty. of San Francisco*, 17 Cal. App. 5th 766, 801–02 (2017) (same). In this case, the district court denied the plaintiffs' motion for summary judgment and granted the City's and County's because the plaintiffs failed to identify any threats, intimidation, or coercion apart from the coercion inherent in storing their vehicles, following our decision in *Lyall*.

As a straightforward application of *Lyall*, the district court did not err. But after the briefs were filed in this case, we decided *Reese v. County of Sacramento*, which substantially clarified the legal standard to be applied in a Bane Act claim. In that case, the district court granted summary judgment to police defendants after they shot the plaintiff in his home. 888 F.3d at 1035–36. The district court, like the district court here, did so by applying the rule that there must be a showing of coercion independent from the coercion inherent in the Fourth Amendment violation itself. *Id.* at 1042. We reversed, concluding that *Lyall*'s independent coercion rule only applies when the plaintiff shows that the defendant negligently violated the plaintiff's constitutional rights, and that the coercion inherent in a Fourth Amendment violation could support a Bane Act claim if the coercion occurred with "specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Id.* at 1043, 1044 n.5 (quoting *Cornell*, 17 Cal. App. 5th at 801).

*Reese* requires us to hold that the district court erred to the extent it concluded that the plaintiffs were required to

show "transactionally independent" threats, intimidation, or coercion separate from the Fourth Amendment violation. *See id.* at 1043. Nonetheless, the district court correctly denied the plaintiffs' motion for summary judgment because the plaintiffs are incorrect that proving a Fourth Amendment violation vicariously triggers Bane Act liability. Instead, proving a Bane Act claim here requires specific intent to violate protected rights, meaning the plaintiffs must have shown that the County and City impounded their vehicles with specific intent to violate their Fourth Amendment rights. *See id.* at 1043–44. Plaintiffs did not demonstrate that they were entitled to summary judgment on this point.

Turning to the district court's summary judgment in favor of the defendants, the undisputed facts show that the defendants violated the plaintiff's Fourth Amendment rights. The defendants were therefore required to demonstrate that there was no dispute of material fact as to specific intent if they were to prevail. The specific intent inquiry for a Bane Act claim is focused on two questions: First, "[i]s the right at issue clearly delineated and plainly applicable under the circumstances of the case," and second, "[d]id the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?" *Cornell*, 17 Cal. App. 5th at 803 (alterations omitted). So long as those two requirements are met, specific intent can be shown "even if the defendant did not in fact recognize the unlawfulness of his act" but instead acted in "reckless disregard" of the constitutional right. *Id.* (alteration omitted).

If there was no dispute of material fact that the right was not clearly delineated and plainly applicable, or that the defendants lacked the particular purpose of depriving the plaintiffs of their protected interests, we may affirm the

district court's summary judgment on this alternative ground. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) ("[S]ummary judgment may be affirmed on any ground supported in the record, including reasons not relied upon by the district court").

We conclude that the plaintiffs' right was not clearly delineated and plainly applicable in this case. At a broad level of generality, it is of course indisputable that the right to be free from warrantless seizures of personal property is well-established and clearly delineated. But the California Court of Appeal has indicated that we must look to whether there is anything "vague or novel about [the application of the right] under the circumstances of this case." *Cornell*, 17 Cal. App. 5th at 803. Under the circumstances of this case, it was legally unclear whether the 30-day impounds were "seizures" at all within the meaning of the Fourth Amendment until we issued our decision in *Brewster* in 2017. The plaintiffs' vehicles were impounded in 2011, well before this date, and at that point the County and City could not have had the requisite specific intent to violate the plaintiffs' Fourth Amendment rights. *See Alviso v. Sonoma Cty. Sheriff's Dep't*, 186 Cal. App. 4th 198, 214 (2010) (rejecting the claim that *Brewster* validated). The district court therefore did not err by granting summary judgment to the defendants.

**AFFIRMED.**

WATFORD, Circuit Judge, concurring:

I recognize that the Fourth Amendment analysis in this case is controlled by *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017), a decision I joined. After giving the matter further consideration, I am now of the view that we reached the right result in *Brewster* but for the wrong reason. California Vehicle Code § 14602.6 is constitutionally deficient not because it runs afoul of the Fourth Amendment, as we held in *Brewster*, but because the post-seizure hearing it affords does not comply with the Due Process Clause of the Fourteenth Amendment.

The Fourth Amendment does, of course, have something to say about the government's ability to seize your car without a warrant and keep it for 30 days. As we noted in *Brewster*, however, the initial warrantless seizure authorized under § 14602.6 will seldom raise any Fourth Amendment concerns on its own. *Id.* at 1196. The statute is typically invoked when a police officer pulls a car over and arrests the driver for driving on a suspended or revoked license, or without having been licensed at all. In that scenario, the officer will usually be justified in seizing the vehicle without a warrant under the community caretaking exception because the vehicle must be removed from the roadway and the driver obviously can't drive it back home himself.

The doctrinal leap we took in *Brewster* was to hold that a vehicle remains "seized," within the meaning of the Fourth Amendment, even after being impounded. That meant the city had to offer a valid Fourth Amendment justification both for its decision to impound the vehicle in the first place and for its continued retention of the vehicle without a warrant. We held that the community caretaking exception justified the initial warrantless impoundment, but once the vehicle had been removed from the roadway, that exception no

longer sufficed. The city therefore had to offer a "new justification" for holding onto the vehicle, which it simply failed to do. *Id.* at 1197.

I no longer view *Brewster*'s holding that the Fourth Amendment seizure continued throughout the 30-day impoundment period as correct. Under certain circumstances, the concept of a continuing seizure may fairly describe the government's retention of property. But a seizure requires "some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County*, 506 U.S. 56, 61 (1992). So if you don't have a valid possessory interest in property, it can't be seized from you for Fourth Amendment purposes. In my view, that is the effect of § 14602.6: It deprives the owner of a valid possessory interest in her vehicle by authorizing a temporary 30-day civil forfeiture of that interest. A valid forfeiture of one's possessory interest in property ends a Fourth Amendment seizure, just as a criminal conviction ends a Fourth Amendment seizure of the person. *See Manuel v. City of Joliet*, 137 S. Ct. 911, 920 n.8 (2017). Once the forfeiture imposed by § 14602.6 is upheld, the government does not need to obtain a warrant authorizing the continued retention of the vehicle. The forfeiture determination itself grants such authorization.

The real question, which we did not address in *Brewster*, is whether the forfeiture authorized by § 14602.6 is constitutionally valid. 859 F.3d at 1196 n.2, 1197. I think it is. Deterring unlawful conduct is a permissible objective of forfeiture statutes. *See Bennis v. Michigan*, 516 U.S. 442, 452 (1996). Section 14602.6 is designed to deter those who are caught driving without a license from engaging in that conduct again, and to deter others who lack a valid license from driving in the first place. A state legislature could

rationally conclude that you will be less likely to drive without a license if you know that, in addition to any other penalties that may be imposed, you can lose possession of your car for 30 days if you get caught.

Section 14602.6 appears to withstand the principal constitutional objections that might be interposed. There is a tight nexus between the property to be forfeited and the underlying wrongdoing involved (driving without a valid license), so we need not confront the outer limits of the government's authority to impound property as a means of deterring misconduct unrelated to that property. The nature of the deprivation (dispossession for 30 days) is not disproportionate to the seriousness of the underlying wrongdoing, so we don't face the concerns that might be raised if the statute authorized permanent forfeiture of title to the vehicle. And the statute has built-in protections that allow "innocent owners" to reclaim their vehicles without having to suffer the 30-day impound. *See* Cal. Vehicle Code § 14602.6(d), (f).

If § 14602.6 clears these constitutional hurdles, no work remains for the Fourth Amendment to do. So long as there is probable cause to believe the vehicle is subject to forfeiture, it may be impounded without a warrant, whether or not the community caretaking exception applies. *See Florida v. White*, 526 U.S. 559, 561 (1999). Fourth Amendment concerns could arise if an owner were not afforded a prompt hearing at which to contest the validity of the temporary forfeiture, given the relatively brief impoundment period. *See Krimstock v. Kelly*, 306 F.3d 40, 54 (2d Cir. 2002). But the statute addresses those concerns by requiring prompt notice to the owner and by providing the right to a hearing within two days of making the request. Cal. Vehicle Code §§ 14602.6(a)(2), (b), 22852(b), (c).

Because that time frame is sufficiently short, little would be accomplished by requiring the government to obtain a warrant pending the final forfeiture decision. The owner will know within a matter of days whether the vehicle is subject to forfeiture, and that determination will be made following an adversarial hearing at which she can contest the government's evidentiary showing.

Section 14602.6 does suffer from one constitutional deficiency, which I alluded to at the outset. When the government seeks to obtain property through forfeiture, it must comply not only with the demands of the Fourth Amendment but also with those of the Due Process Clause. *United States v. James Daniel Good Real Property*, 510 U.S. 43, 52 (1993). Section 14602.6 provides the right to a prompt hearing to contest the impoundment, but this hearing may be conducted by an officer or employee of the police department responsible for seizing the vehicle. Cal. Vehicle Code § 22852(c). Due process does not demand a full-blown jury trial in this context, but it surely entitles an owner to a hearing before a neutral decision-maker. *See Goldberg v. Kelly*, 397 U.S. 254, 271 (1970). The plaintiff in *Brewster* did not receive such a hearing, and neither did the plaintiffs in this case. That fact alone renders the impoundment of their vehicles unlawful.