NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 10 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JOHN BRANDSTETTER, | No. 23-55739 |
| Plaintiff-Appellant, | D.C. No. 5:20-cv-01866-FLA-SHK |
| v. | |
| CITY OF RIVERSIDE; RIVERSIDE POLICE DEPARTMENT, a public entity; LARRY V. GONZALEZ, Police Chief, individual and official capacity; JOLYNN TURNER, Riverside Police Det.; DOES, 1 through 10, all sued in their individual capacities, | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Fernando L. Aenlle-Rocha, District Judge, Presiding

Argued and Submitted September 12, 2024
Pasadena, California

Before:  SCHROEDER, R. NELSON, and MILLER, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge R. NELSON.

John Brandstetter appeals from the district court's grant of summary

judgment to the defendants in his action under 42 U.S.C. § 1983 against the City of

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Riverside, Chief Larry Gonzalez and Detective Jolynn Turner of the Riverside Police Department, and other unnamed defendants (collectively, "the City"). Brandstetter allowed Kevin Gleason to reside temporarily in his house, but unbeknownst to Brandstetter, Gleason was under criminal investigation for sending threatening messages to his ex-wife. Law enforcement officers obtained and executed warrants to arrest Gleason, search the house, and seize any firearms they found. They seized ten of Brandstetter's lawfully owned firearms. Brandstetter argues that the City violated his Second and Fourth Amendment rights by unlawfully seizing and retaining his firearms. We have jurisdiction under 28 U.S.C. § 1291, and we review de novo the district court's grant of summary judgment. *Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011). We affirm.

1. The City's seizure of Brandstetter's firearms did not violate the Fourth Amendment. Brandstetter alleges that the warrant affidavit contained false or misleading information. *See Franks v. Delaware*, 438 U.S. 154, 171–72 (1978). To succeed on such a claim, a plaintiff "must (1) establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause, and (2) make a 'substantial showing' that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011) (quoting *Ewing v. City*

2

*of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009)).

Brandstetter's claim fails at the first step. Brandstetter contends that the warrant omitted the fact that he owned the house and was not suspected of any crime, but that information was not material to the basis for probable cause: the threats that Gleason made, and might have fulfilled, using Brandstetter's firearms. Brandstetter also argues that the information about Gleason's possession of firearms was stale. But even if that information was stale, the information about the threats, which justified the warrant, was not.

2. Brandstetter's Fourth Amendment challenge to the City's retention of his firearms likewise fails. "A seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force." *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017). The City continues to hold the firearms under California Penal Code section 33850, which requires people whose firearms are in the control or custody of the government to sign and submit a form before they can retrieve them. Specifically, applicants must provide personally identifying information and a valid state identification card, describe their firearms, and identify the law enforcement agency holding them so that the California Department of Justice can confirm that they are "eligible to possess a firearm." Cal. Penal Code § 33850(a).

Brandstetter claims that the City no longer has a justification under the

Fourth Amendment for its retention of his firearms. But he has not met his burden to show that the government's continued retention of the firearms is a seizure at all—in other words, that it is a "meaningful interference with" his "possessory interests in that property." *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012) (quoting *United States v. Jacobsen,* 466 U.S. 109, 113 (1984)). Brandstetter has offered no evidence that filling out the required form would be costly or burdensome, or that the requirement that he complete the form meaningfully interferes with his ability to regain possession of his firearms.

Instead, he claims that the City must return his firearms without requiring him to do anything at all. But the City does not need to hand over the firearms, no questions asked, when someone claiming to be Brandstetter shows up and asks for them. Indeed, our precedent suggests that it would be appropriate to require owners of seized property to present identification before the property is returned. *See Brewster*, 859 F.3d at 1195–97. At oral argument, Brandstetter's counsel effectively conceded as much, acknowledging that it would be constitutional for the City to require someone picking up an impounded car to present a valid driver's license—in other words, to prove his identity and his legal entitlement to drive the car off the lot. That requirement is materially identical to the one at issue here—filling out a form to establish that Brandstetter is who he says he is and may legally possess firearms. Brandstetter's concession thus undermines any claim that

the continued retention of his firearms is attributable to the City rather than to his unwillingness to comply with the ministerial requirements of the statute.

This case therefore differs from *Brewster v. Beck*, in which we determined that the government violated the Fourth Amendment by retaining Brewster's vehicle *after* she "appeared at a hearing . . . with proof that she was the registered owner of the vehicle and her valid California driver's license" and "offered to pay all towing and storage fees that had accrued." 859 F.3d at 1195. There, the plaintiff complied with all reasonable procedural requirements necessary for her to regain her property. Brandstetter has complied with none.

3. Brandstetter's Second Amendment claim fails too. Section 33850 is reasonably designed "to ensure only that those [keeping] arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 38 n.9 (2022) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)). Critically, Brandstetter has presented no evidence that section 33850 was "put toward abusive ends" or that the State has employed "lengthy wait times in processing [section 33850] applications or exorbitant fees [to] deny ordinary citizens their right to" possess firearms. *Id.* Nor has he presented evidence that the State uses anything but "narrow, objective, and definite standards" in applying the statute. *Id.* (quoting *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969)).

5

4. Brandstetter contends that the district court abused its discretion in refusing to consider sanctioning defense counsel under Federal Rule of Civil Procedure 11. *See Avery Dennison Corp. v. Allendale Mut. Ins. Co.*, 310 F.3d 1114, 1117 (9th Cir. 2002). It did not. Having entered judgment on the merits in favor of the City and denied the City's request to sanction Brandstetter's counsel, the district court understandably did not institute Rule 11 proceedings against the City's counsel.

**AFFIRMED.**

*Brandstetter v. City of Riverside*, No. 23-55739

R. Nelson, J., concurring in part and dissenting in part:

The City of Riverside has refused to return John Brandstetter's firearms for nearly four-and-a-half years. And it has no justification for keeping them. Because that violates the Second and Fourth Amendments, I dissent in part.[1]

1.      The Fourth Amendment required the City to return Brandstetter's firearms once its justification for seizing them expired. "[A] seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests." *United States v. Jacobsen*, 466 U.S. 109, 124 & n.25 (1984). Once the government's justification for seizing property wears off, the government must "cease the seizure or secure a new justification." *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017).

This principle controls here. Brandstetter lawfully owned his firearms, and City police had no reason to believe that Brandstetter would use them unlawfully. Police first seized Brandstetter's firearms for "safekeeping"—not because Brandstetter was dangerous, but because a guest living in his home, Kevin Gleason, threatened to shoot someone. The City concedes that seizing Brandstetter's firearms

---

[1] I concur in the majority's conclusions that the initial seizure of the guns was constitutional and that the district court did not abuse its discretion in denying Brandstetter's request for Rule 11(c) sanctions.

1

would not serve any other evidentiary or peacekeeping function. Put simply, the only reason the City took Brandstetter's guns was to keep Gleason from using them.

And that justification disappeared when Gleason was arrested and lost access to Brandstetter's guns—in June 2020. Nor has Gleason been—or will be—allowed back in Brandstetter's home, so Gleason will not regain access to the guns. Thus, the City's only justification for seizing Brandstetter's guns expired long ago. The Fourth Amendment requires the City to return them. *Brewster*, 859 F.3d at 1197.

Yet for four-and-a-half years, the City has refused. Why? The City claims that state law prevents it from returning the guns. Under California law, Brandstetter must submit an application, pay a fee (which in some cities can amount to hundreds of dollars), and wait for the State's Department of Justice to determine whether he is eligible to own the guns. Cal. Penal Code §§ 33850(a), 33855(d). Only then will the City return them.

But absent probable cause that Brandstetter committed a crime, the desire to ensure that Brandstetter can legally own firearms is not a valid justification to seize and hold his guns.[2] Can California seize and hold every car in the state until each

_____

[2] The majority suggests that the application and fee are necessary so that the City may verify Brandstetter's identity. But the City already knows Brandstetter's identity. City police spoke with Brandstetter, obtained a warrant to search his home, and found the firearms there. While in his home, police searched the registration numbers associated with Brandstetter's firearms and verified that they belonged to him. The City also concedes that it has no reason to believe that Brandstetter's guns

owner proves that she is, in fact, the owner?  It's a sad day in our Fourth Amendment jurisprudence if the City thinks that's constitutional.

More to the point, California law cannot exempt the City from complying with the Fourth Amendment.  *Sibron v. New York*, 392 U.S. 40, 61 (1968).  State law might require the City to hold Brandstetter's firearms, but that "does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment." *Miranda v. City of Cornelius*, 429 F.3d 858, 864–65 (9th Cir. 2005).  The federal Fourth Amendment requires the City to return the guns, and that supersedes any contrary requirements in California law.  *See id.*

The majority does not dispute these points.  It justifies the City's actions on other grounds.  The majority reasons that the application and fee that the City requires are so minimal that they do not "meaningfully interfere[]" with Brandstetter's ability to "regain possession of his firearms."  Maj. at 4.

The majority's reasoning puts the cart before the horse.  It's the continued seizure of Brandstetter's firearms that violates the Fourth Amendment—not the application and fee.  *See Soldal v. Cook County*, 506 U.S. 56, 69 (1992) ("What

---

are illegally owned. The City's insistence on mere formalities is thus much different from requiring proof of identity before returning a car towed from the street.  And by allowing the City to rest on those formalities, the majority, at bottom, argues that the City may retain the guns until Brandstetter complies with the bureaucratic niceties of state law.  Yet, as discussed below, state law can't exempt the City from the requirements of the Fourth Amendment, which required the City to return the firearms when its safekeeping justification expired.

matters is the intrusion on the people's security from governmental interference.").

The City's post-deprivation procedures might be relevant to a due process or a takings claim. But they do not convert the City's refusal to return Brandstetter's guns into something other than a continued seizure. The Fourth Amendment is implicated because the City forcefully took Brandstetter's guns and refuses to return them—and the Fourth Amendment remains implicated whether or not California's bureaucratic niceties are burdensome.

The majority's reasoning exposes a more fundamental point. By concluding that the City has not meaningfully interfered with Brandstetter's possessory interest in his guns, the majority suggests that once an initial seizure is complete, the Fourth Amendment no longer has anything to say about a government's obligation to return the property. At least two of our sister circuits adopt that position. *E.g.*, *Fox v. Van Oosterum*, 176 F.3d 342, 351 (6th Cir. 1999); *Lee v. City of Chicago*, 330 F.3d 456, 465–66 (7th Cir. 2003). And at least one member of our court has argued that if the initial seizure is valid, the property owner temporarily forfeits any possessory interest in the property. *Sandoval v. County of Sonoma*, 912 F.3d 509, 521–22 (9th Cir. 2018) (Watford, J., concurring). Without a possessory interest in the forfeited property, the argument goes, the owner has no Fourth Amendment right to have the property returned. *See id.*

4

The trouble is, our Circuit has taken a different path. Under our precedent, "the Fourth Amendment is implicated by a delay in returning the [lawfully seized] property." *Brewster*, 859 F.3d at 1197 (cleaned up). The D.C. Circuit recently adopted our view, recognizing that our position is consistent with the original meaning of the Fourth Amendment and with Supreme Court precedent. *Asinor v. District of Columbia*, 111 F.4th 1249, 1252–54 (D.C. Cir. 2024) (Katsas, J.); *see also id.* at 1261 (Henderson, J., concurring).

We must follow our binding precedent. Under that precedent, the Fourth Amendment requires the City to return Brandstetter's guns when the City's justification for keeping the guns expires. Since neither the City nor the majority articulates a valid justification for continuing to hold the guns, the City is not entitled to summary judgment on Brandstetter's Fourth Amendment claim.

2. Nor is the City entitled to summary judgment on Brandstetter's Second Amendment claim. There is no dispute that the Second Amendment guarantees Brandstetter a right to keep firearms in his house. *District of Columbia v. Heller*, 554 U.S. 570, 628–29 (2008). There is also no dispute that the City "infringe[s]" that right by retaining Brandstetter's firearms. *See* U.S. Const. amend. II; *Frein v. Pa. State Police*, 47 F.4th 247, 254 (3d Cir. 2022). Thus, the City must show that its practice of holding Brandstetter's firearms until he submits an application and fee is

"consistent with the Nation's historical tradition of firearm regulation." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022).

The City has not done so. The City has not pointed to any historical regulations allowing government to continue seizing lawfully owned firearms after any justification for the seizure expires. Nor is it likely that the City will be able to: the Third Circuit recently canvassed the historical record and determined that the Second Amendment requires police to return lawfully owned firearms when the justification for seizing them expires. *Frein*, 47 F.4th at 256. Since the City has not shown that its practice is consistent with the Nation's tradition of firearm regulation, the City is not entitled to summary judgment on Brandstetter's Second Amendment claim.

To be sure, the City claims that California's application and fee are more objective and less onerous than the New York public-carry licensing scheme at issue in *Bruen*. But the fact that California's law is different from New York's law does not mean that the City's conduct is constitutional. To prove that its conduct is constitutional, the City must show that it acted consistently with the Nation's tradition of firearm regulation. *Bruen*, 597 U.S. at 24. Again, the City points to no tradition of requiring an application and fee before returning lawfully owned firearms.

Nor does the majority. Instead, the majority concludes that the City is entitled to summary judgment because Brandstetter "has presented no evidence" that the City's application and fee are "put toward abusive ends," subjective, or unduly burdensome. Maj. at 5 (quoting *Bruen*, 597 U.S. at 39 n.9).

There are three problems with this reasoning. First, it flips the burden. Under *Bruen*, Brandstetter need not show that the City's conduct is unconstitutional. Instead, the City must show that its practice falls within the Nation's tradition of firearm regulation. *Bruen*, 597 U.S. at 24. The majority errs by forgiving the City's failure to meet its burden and errs again by placing that burden on Brandstetter.

Second, the majority's test conflicts with the Supreme Court's instructions. We are to compare each firearm regulation to analogous, historical laws. *Id.* at 24, 26–29. We are not to engage in means-end balancing. *Id.* at 22–23. And asking whether the City's requirements are unduly burdensome is quintessential means-end balancing. Taking a gun and demanding a fee implicates the Second Amendment whether the fee is one dollar or five hundred. *See Frein*, 47 F.4th at 254 ("[T]he Supreme Court recently instructed us to closely scrutinize *all* gun restrictions for a historically grounded justification."). So the majority errs in suggesting that Brandstetter can't state a Second Amendment claim unless he shows that the City's application and fee are burdensome.

Third, the majority does not derive its test from the Nation's tradition of firearm regulation. Instead, the majority rests on a footnote from *Bruen* that, the majority suggests, held that firearm licensing schemes are unconstitutional only if they are subjective, unduly burdensome, or put to abusive ends. Maj. at 5 (citing *Bruen*, 597 U.S. at 39 n.9).

But the footnote that the majority relies on expressly disclaims the proposition for which the majority cites it. The footnote does not hold that objective and unburdensome licensing schemes are constitutional. To the contrary, the Court declined to "rule out constitutional challenges" to such licensing regimes. *Bruen*, 597 U.S. at 39 n.9. The constitutionality of such laws depends, as with any other firearm regulation, on their consistency with the Nation's tradition of firearm regulation. *See id.* at 26–29. And, again, neither the majority nor the City has shown that the City's conduct is.

\* \* \*

The City has no justification for continuing its seizure of Brandstetter's guns. Yet for four-and-a-half years, it has refused to return them. I would reverse the district court's grant of summary judgment on Brandstetter's Second and Fourth Amendment claims. Because the majority does otherwise, I respectfully dissent.

8