**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SERGIO MOMOX-CASELIS,
individually, as Guardian Ad Litem,
and as Special Administrator of the
estate of M.M. on behalf of Maria
Momox-Caselis,
                    *Plaintiff-Appellant*,

                    and

MARIA MOMOX-CASELIS; NICOLASA
HERNANDEZ, as Special
Administrator of the estate of M.M.;
KRISTIN WOODS, Co-Special
Administrator of the Estate of M.M.,
                    *Plaintiffs*,

                    v.

TARA DONOHUE; LISA RUIZ-LEE;
KIM KALLAS; JEREMY LAW;
SHUUANDY ALVAREZ; LANI AITKEN;
OSCAR BENAVIDES; PATRICIA
MEYERS; COUNTY OF CLARK, a
political subdivision of the State of
Nevada,
                    *Defendants-Appellees*,

                    and

No. 19-15126

D.C. No.
2:16-cv-00054-
APG-GWF

OPINION

IRENE KOZIKI; CLARK COUNTY
DEPARTMENT OF FAMILY SERVICES;
ESTATE OF JOAQUIN JUAREZ-PAEZ;
BETH ANN NELSON; JOAQUIN
JUAREZ-PAEZ; MAIRA JUAREZ-PAEZ,
                    *Defendants.*

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Argued and Submitted September 15, 2020
San Francisco, California

Filed February 3, 2021

Before:  J. Clifford Wallace, Bridget S. Bade, and
Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Wallace

# SUMMARY[*]

## Civil Rights

The panel affirmed the district court's summary judgment in favor of individual employees of the Clark County Department of Family Services and the County in an action brought pursuant to 42 U.S.C. § 1983 and state law alleging defendants wrongfully removed plaintiffs' infant daughter, M.M., from plaintiffs' home, wrongfully removed M.M. from her foster mother's home, and then placed her in a neglectful foster home that caused her death.

The panel first held that plaintiffs waived several appellate arguments. Plaintiffs waived issues pertaining to the district court's denial of their request for leave to amend their Second Amended Complaint and their countermotion for summary judgment by failing to challenge the rulings in their opening brief. Plaintiffs waived their claim alleging a failure to train social workers or supervisors by failing to argue the issue in opposition to the County's summary judgment motion or in their opening brief. Plaintiffs waived their argument that defendant social worker Law was not entitled to discretionary act immunity under Nevada law because the argument was inconsistent with their prior concession in district court. The panel therefore affirmed the district court's grant of discretionary act immunity to defendant Law.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel affirmed the district court's summary judgment in favor of employees Ruiz-Lee and Donahue on plaintiffs' claim that they failed to train and supervise social workers. Plaintiffs had failed to identify the procedures that Ruiz-Lee or Donahue allegedly failed to follow and the panel further noted that Donahue was not listed as a defendant in the third claim of the Second Amended Complaint alleging failure to train pursuant to § 1983. The panel determined that plaintiffs' assertion that the County was liable for ratifying questionable Department policies was waived because plaintiffs failed to present argument or cite evidence in the record to support the argument.

The panel held that plaintiffs failed to present a genuine dispute that M.M. was wrongfully removed from their home or that defendants acted with deliberate indifference. The panel noted that the County provided voluminous records of the Department's rigorous licensing and training policies that foster parents had to complete. The panel further held that neither the "special relationship" or the "state-created danger" exceptions applied to overcome the hurdle that the Due Process Clause does not confer an affirmative right to governmental aid or impose a duty on the state to protect individuals from third parties. The panel concluded that plaintiffs' arguments relied on supposition and a mischaracterization of the evidence, while the County presented voluminous evidence to refute plaintiffs' claims.

Finally, the panel held that the district court properly decided the question of causation for the state negligence claim as a matter of law rather than a matter of fact. As for the wrongful death claim, plaintiffs addressed it in the section title but did not cite any facts in the record or present argument relating to the claim. The claim was therefore waived.

In concurrently filed orders, the panel denied plaintiffs' motion to supplement the record, but granted the motion to seal the proposed supplemental record because the testimony in the full deposition transcripts included information relating to minor children.

## COUNSEL

Adam Ganz (argued), and Marjorie Hauf, Ganz & Hauf, Las Vegas, Nevada, for Plaintiffs-Appellants.

Felicia Galati (argued), Olson Cannon Gormley & Stoberski, Las Vegas, Nevada, for Defendants-Appellees.

## OPINION

WALLACE, Circuit Judge:

Sergio Momox-Caselis, Maria Momox-Caselis, and the special administrators of M.M.'s estate (collectively, the Momox-Caselis family) appeal from the district court's summary judgment in favor of individual employees of the Clark County Department of Family Services (Department) and the County (collectively, the County). Sergio and Maria Momox-Caselis are the natural parents of deceased infant M.M. The Department removed M.M. and her siblings from their home in 2013 based on long-term neglect by the parents. The County removed M.M. from her initial placement after receiving a report that the foster parents had abused another foster child, and it placed M.M. with new foster parents, Joaquin and Maira Juarez-Paez (collectively, the Juarez-Paez family). A few months after her new placement, M.M. died from an overdose of allergy

medication administered by her foster father. Joaquin Juarez-Paez committed suicide shortly thereafter, and his suicide note stated that he had accidentally killed M.M.

The Momox-Caselis family sued Joaquin Juarez-Paez's estate, Maira Juarez-Paez, and various County officials involved in the foster care system in Nevada state court. The action was removed to federal district court pursuant to 28 U.S.C. § 1441 based on federal question jurisdiction due to the inclusion of federal claims in the Momox-Caselis family's complaint. The Momox-Caselis family amended its complaint twice, and it stipulated to the dismissal of Joaquin Juarez-Paez's estate, Maira Juarez-Paez, and M.M.'s Department caseworker Irene Koziki from the action. The Momox-Caselis family alleges M.M. was wrongfully removed from its home, wrongfully removed from her initial foster mother's home, and placed in a neglectful foster home that caused her death, in violation of state and federal law, including the Due Process Clause.

After extensive discovery, the County moved for summary judgment on all counts. The County argued that: (1) it was necessary to remove M.M. from both her natural parents and her initial foster home due to allegations against each family of neglect and abuse; (2) the County had properly trained its Department officials, and the Momox-Caselis family could not identify inadequate training; (3) it had properly trained and licensed the Juarez-Paez family; (4) it had properly placed M.M. with the Juarez-Paez family; (5) it had adequate policies in place to ensure the safety of the children under the Department's care, and the Momox-Caselis family could not identify a specific policy that was deficient; and (6) the Department had exercised adequate supervision over M.M. and the Juarez-Paez family.

The Momox-Caselis family responded with its own motion for partial summary judgment, as well as a request to amend the complaint.  The Momox-Caselis family maintained that there were genuine disputes of material facts and disagreed with portions of the County's Statement of Undisputed Facts.  The district court denied the Momox-Caselis family's motion to amend as futile, granted the County's summary judgment motion, and held that the Momox-Caselis family had failed to present evidence to support its claims.  The district court also held that while the special relationship or state-created danger doctrine in relation to the due process claim could apply, there was not a genuine dispute of material fact that would rise to the level of deliberate indifference by the County.  As for the remaining failure to train claim and state negligence claims, the district court held that the Momox-Caselis family failed to present evidence of failure to train, negligently created policies, or skewed reporting, and the County was entitled to discretionary act immunity.  The Momox-Caselis family appeals from the summary judgment.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Reviewing the district court's summary judgment de novo, *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 515 (9th Cir. 2018), we affirm.

## I.

The Department removed M.M. and her siblings from their home in 2013 based on long-term neglect by their natural parents.  After, a state court judge in the County's Family Division approved the removal. The Department first placed M.M. with the Hernandez family.  The Hernandez family had previously adopted foster children, and it was fostering another child in addition to M.M.  The Hernandez family had been licensed to foster children for several years,

but they also had a long history of licensing issues, reports, and complaints. In May 2014, M.M.'s foster brother reported to the Department that their foster father was physically abusive with the children and often used his hands or a belt for discipline. The Department removed M.M. from the Hernandez home, and the Hernandez family's license was eventually revoked.

In June 2014, the County placed M.M. in the only available foster home. Maira and Joaquin Juarez-Paez, new foster parents, took M.M. into their home with their foster son. The Juarez-Paez family had received a license to foster children in May 2014. Maira took care of the children in the evening, while Joaquin took care of them during the day. Social workers visited approximately once a month to check on M.M. and to ensure that the Juarez-Paez home continued to be a safe environment. Yet in the last two to three weeks of M.M.'s life, Joaquin struggled with his underlying health issues, and he required more assistance from Maira. On M.M.'s final day in October 2014, Joaquin gave her too much of her allergy medicine, and she died from the overdose. Joaquin committed suicide shortly thereafter. The County eventually returned the remaining Momox-Caselis children to their natural parents.

## II.

We review summary judgments de novo. *Sandoval*, 912 F.3d at 515. Summary judgment is appropriate if there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). However, if the nonmoving party contests summary judgment, the alleged factual dispute must be both genuine and material to the nonmoving party's claims. *See id*. We view justifiable inferences in the light most favorable to the nonmoving party; however, the nonmoving party "may not

rest upon mere allegations or denials of [its] pleading." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (citations omitted); Fed. R. Civ. P. 56(e).

Therefore, the existence of "some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Liberty Lobby, Inc.*, 477 U.S. at 247–48 (emphasis omitted). The nonmoving party must produce specific facts, by affidavit or other evidentiary materials, to show that there is a *genuine* issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). "Only disputes over facts that might affect the outcome of the [action] under the governing law will properly preclude the entry of summary judgment" for purposes of materiality. *Liberty Lobby, Inc.*, 477 U.S. at 248. An issue is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

## III.

The Momox-Caselis family has waived several appellate arguments. These arguments were either not raised before the district court, are inconsistent with positions employed there, or are presented without argument.

Generally, we do not consider arguments raised for the first time on appeal. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). This rule is subject to three exceptions: (1) there are exceptional circumstances why the issue was not raised in the trial court; (2) the new issue arises while the appeal is pending because of a change in the law; or (3) the issue presented is a pure question of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court. *Raich v. Gonzales*, 500 F.3d 850, 868 (9th Cir. 2007). We have also held that a cursory

mention of an issue in a footnote without citation to legal authority is insufficient for purposes of appellate consideration, *United States v. Strong*, 489 F.3d 1055, 1060 n. 4 (9th Cir. 2007), as are matters not specifically and distinctly raised and argued in the opening brief, *Padgett v. Wright*, 587 F.3d 983, 985 n. 2 (9th Cir. 2009).

The Momox-Caselis family did not raise several issues with the district court that it now offers to us or it has modified its arguments to account for the district court's summary judgment. First, its appeal does not present argument regarding the district court's denial of its request to amend nor its countermotion for summary judgment. The Momox-Caselis family sought leave to amend its Second Amended Complaint to correct its first claim's erroneous reliance on the Fifth Amendment rather than the Fourth Amendment. The district court rejected the request as futile in its summary judgment order, although it nonetheless considered the substantive argument as if it had been raised pursuant to the Fourth Amendment. The Momox-Caselis family did not challenge this ruling in its opening brief, and this issue is, therefore, waived.

Second, the third claim in the Second Amended Complaint alleges a failure to train social workers or supervisors. As in the district court, the Momox-Caselis family does not identify the alleged deficiencies in the Department's training of its social workers or supervisors. The Momox-Caselis family did not argue that the County failed to train its social workers and supervisors in its opposition to the County's summary judgment motion, and it did not argue the issue in its opening brief. Consequently, the Momox-Caselis family waived appeal of the district court's ruling on the third claim.

Third, in response to the district court's ruling on their state law claims, the Momox-Caselis family modified the nature of its claims against several defendants, as discussed below. The fourth claim in the Second Amended Complaint alleges various claims of negligence relating to M.M.'s placement and supervision in the Juarez-Paez home. The Department asserted that they were entitled to discretionary act immunity under Nevada law. *See* Nev. Stat. § 41.032.2; *Ransdell v. Clark Cnty.*, 192 P.3d 756, 762 (Nev. 2008) (en banc). In the district court, the Momox-Caselis family conceded that "a large part of Law's investigation and recommendations [were] discretionary in nature." Yet it argued that he "skewed" his investigative findings that led to M.M.'s removal from the initial foster family's home and that doing so was not discretionary. The district court held that Law was entitled to discretionary act immunity.

In this court, the Momox-Caselis family argues that Law is not entitled to discretionary act immunity because gathering information and preparing a recommendation were ministerial tasks and did not involve policy considerations. This argument is inconsistent with their prior concession in district court. We, therefore, hold that this argument has been waived because it was not presented to the district court, and we affirm the district court's grant of discretionary act immunity to Law.

The Momox-Caselis family has also changed its argument regarding its state law claims related to training County employees. In the district court, the Momox-Caselis family argued that discretionary act immunity did not apply to County director Lisa Ruiz-Lee and licensing manager Tara Donohue because they created policy for the Department. The district court granted summary judgment in favor of Ruiz-Lee and Donohue, not on the ground of

discretionary act immunity, but because of the lack of "argument or evidence" as to "what these defendants allegedly did wrong."  On appeal, the Momox-Caselis family refocuses its argument to Ruiz-Lee's and Donohue's alleged failure to train and supervise social workers.  Yet it again fails to identify the procedures that Ruiz-Lee or Donohue failed to ensure the social workers, including Defendant Law, followed.  Moreover, Donohue is not listed as a defendant in the third claim of the Second Amended Complaint alleging failure to train pursuant to § 1983.  Thus, we affirm the district court's grant of summary judgment in favor of Ruiz-Lee and Donohue.

Finally, in connection with their claim that the Department was deliberately indifferent to M.M.'s safety and well-being, for the first time on appeal the Momox-Caselis family asserts that the County is liable because it ratified questionable Department policies and procedures.  However, it fails to present argument or cite evidence in the record to support the assertion.  Thus, the ratification argument is waived.

Ultimately, the Momox-Caselis family's reply to the various waiver issues did not list an exception to the waiver rule or present any argument.

## IV.

The Second Amended Complaint alleges civil rights violations pursuant to 42 U.S.C. § 1983 (claims one, two, and three), negligence (claims four and five), and wrongful death (claim six).  The Momox-Caselis family argues that the district court erred because it decided questions of fact as matters of law.  However, each of the Momox-Caselis family's asserted factual disputes are either resolved by the record or are insufficient to create a genuine dispute of

material fact on its claims.  As discussed above, the Momox-Caselis family's third claim of failure to train has been waived whereas its fifth claim of state-law negligence was effectively dismissed when it stipulated to the dismissal of Maira Juarez-Paez and Joaquin's estate from its action. Accordingly, only four claims remain.  We next affirm the district court's ruling on the remaining claims.

## A.

The Momox-Caselis family's first section 1983 claim alleges that Clark County violated the Momox-Caselis family's Fifth and Fourteenth Amendment rights when the Department seized their children, including M.M., "without warning and without any immediate threat from Plaintiffs." In the district court, the County characterized this claim as based on M.M.'s *seizure* and argued such a claim is properly based on the Fourth rather than the Fifth Amendment.  The County did not mention the Fourteenth Amendment claim. Yet the district court granted summary judgment in favor of the County because the district judge concluded it "pointed out an absence of evidence to support the plaintiff's first claim."  The district court further found that the Momox-Caselis family did not identify the applicable law, explain how the County violated either M.M.'s parents' Fourteenth Amendment rights or M.M.'s Fourth Amendment rights, or cite any evidence that would raise a genuine dispute about the propriety of the County's actions.

"The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies." *Mabe v. San Bernadino Cnty. Dep't. of Public Soc. Servs.*, 237 F.3d 1101, 1107 (9th Cir. 2001).  "[T]he state may not remove children from their parents' custody without a court order unless there is specific, articulable evidence that provides reasonable cause

to believe that a child is in imminent danger of abuse." *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000). Whether reasonable cause to believe exigent circumstances existed, "and the related questions, are all questions of fact to be determined by a jury." *Wallis*, 202 F.3d at 1138 (citing *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir.1984)). "Summary judgment in favor of the defendants is improper unless, viewing the evidence in the light most favorable to the plaintiffs, it is clear that no reasonable jury could conclude that the plaintiffs' constitutional rights were violated." *Id.*

On appeal, the Momox-Caselis family argues that summary judgment on its first claim was improper because whether M.M. was appropriately removed from her family has "hardly been established as a matter of law." However, as in the district court, the Momox-Caselis family again fails to identify the applicable law. Additionally, the Second Amended Complaint alleges a Fourteenth Amendment violation based on M.M.'s removal from her natural parents, but it does not allege any facts related to her removal from that home. Furthermore, on appeal, the Momox-Caselis family still fails to identify any facts related to M.M.'s removal from her natural parents' home.

The County argues that the Department "appropriately removed" M.M. from her parents' home due to neglect because Maria left the children, aged two to twelve, unsupervised at least twice when Sergio was out of town. They also cite the Family Division judge's decision granting the Department custody of the children. However the parties' briefing does not address the legal authority that governs the Momox-Caselis family's Fourteenth Amendment claim. It does not address whether *the way* she was removed comported with due process. Even if the state

family court found the removal itself appropriate, the briefing does not explain why that decision necessarily means that the way the children were removed from the home complied with due process.

The Momox-Caselis family, therefore, fails to present a genuine dispute that M.M. was wrongfully removed from its home. We hold that its first section 1983 claim fails.

**B.**

Their second section 1983 claim is asserted against all defendants and alleges that Department official policy or longstanding unofficial practice led to due process violations against M.M., namely: (1) the improper licensure of the Juarez-Paez family; (2) improper placement of M.M. into its custody; and (3) failure to supervise the placement. These assertions go against the record, and the Momox-Caselis family does not point to a specific Department policy or practice that violated M.M.'s due process rights. Also, it has inconsistently argued that the Department did not follow its policies and failed to discipline employees who flouted policies. As a result, the Momox-Caselis family does not present a viable *Monell* claim against the County. *See Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Instead, the County provided voluminous records of the Department's rigorous licensing and training process that the Juarez-Paez parents had to complete before obtaining their license to foster children. While there may be factual disputes on some narrow issues, they are not genuine disputes of material fact that would save the second section 1983 claim from summary judgment.

**1.**

Most importantly, the Momox-Caselis family fails to prove that the Department acted with deliberate indifference. The Momox-Caselis family contended that either the "special relationship" exception or the "state-created danger" exception applies to overcome the hurdle that the Due Process Clause does not confer an affirmative right to governmental aid or impose a duty on the state to protect individuals from third parties. *See Kent Sch. Dist.*, 648 F.3d at 971 (citation omitted). We hold that neither exception applies under the facts of this appeal.

The "special relationship" exception applies when there is a custodial relationship between the plaintiff and the State, such that the State assumes some responsibility for the plaintiff's safety and well-being. *Id.* The exception applies to children in foster care. *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 844–47 (9th Cir. 2010) (clarifying that the proper standard for determining whether a foster child's due process rights have been violated is "deliberate indifference"). To qualify for the exception under the deliberate indifference standard, the Momox-Caselis family must prove: (1) there was an objectively substantial risk of harm; (2) the Department was subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed; and (3) the Department either actually drew that inference or a reasonable official would have been compelled to draw that inference. *Id.* at 845. Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted).

The "state-created danger" exception is available when the State "affirmatively places the plaintiff in danger by

acting with 'deliberate indifference' to a 'known and obvious danger.'" *Kent Sch. Dist.*, 648 F.3d at 971–72 (citation omitted). To establish that the Department affirmatively placed M.M. in danger, the Momox-Caselis family must demonstrate that: (1) the Department took affirmative actions that placed M.M. in danger she otherwise would not have faced; (2) the danger was known or obvious; and (3) the Department acted with deliberate indifference to that danger. *Henry A. v. Willden*, 678 F.3d 991, 1002 (9th Cir. 2012). The Supreme Court has held that negligence is insufficient to prove a due process violation. *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (holding that "the Due Process Clause [of the Fourteenth Amendment] is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property") (emphasis in original). The special relationship exception and state-created danger exception analyses share factors; therefore, we examine the facts and address the factors in unison.

## 2.

The Momox-Caselis family argues that M.M. was in foreseeable danger in the Juarez-Paez home, but the Department was deliberately indifferent to the red flags presented by the Juarez-Paez family's application to be foster parents. However, these alleged red flags are either exaggerated or mistaken. For example, the Momox-Caselis family speculates that the Department licensed the Juarez-Paez family based, in part, on information about another family because the licensing file includes notes incorrectly stating that the Juarez-Paez family had two children or were expecting twins. Yet they do not cite any evidence indicating that the Department relied upon these notes when making the licensing determination. In particular,

Defendant Aitken knew that the Juarez-Paez family had no children and could not conceive.

In addition, the Juarez-Paez family completed training and obtained its license in May 2014. Thus, the Momox-Caselis family's repeated arguments that M.M. was placed with the Juarez-Paez family before they were trained and licensed are incorrect. The Momox-Caselis family relies on Defendants' failure to check the medication logs, which indicated that Joaquin inconsistently logged the administration of M.M.'s allergy medication, as evidence of deliberate indifference to a substantial risk of harm to M.M. They did not present this argument to the district court and, thus, we do not consider it. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) (stating that the court generally does not consider arguments raised for the first time on appeal). The Momox-Caselis family's assumption that Joaquin was actively or frequently taking narcotics is unsubstantiated.

The Department also submitted evidence that it contacted numerous foster homes after it removed M.M. from the Hernandez home, and the Juarez-Paez family was the only available home at the time. The Department provided evidence of its supervision of, and guidance to, the Juarez-Paez family once M.M. was placed with it. Finally, while the Momox-Caselis family points to the Department's placement of more than one child under the age of two with the Juarez-Paez family as evidence of deliberate indifference, the governing county resolution states that the goal of placing only one toddler in a foster home at a time is an aspirational goal, not a requirement. Regardless, Nevada state regulation permitted the placement. Nev. Admin. Code § 424.160(4) (2014).

The Department has argued that M.M.'s death at the hands of Joaquin was unforeseeable, and it was unaware of any facts that indicated M.M. would face a substantial risk of harm in the Juarez-Paez home.  Maira and Joaquin's general health status and medications were disclosed to the Department, and an examining physician declared that their health would not inhibit their ability to parent foster children.  There is a genuine dispute about whether the Department and its employees were aware that Maira and Joaquin had been in a car accident and they both occasionally used narcotic pain relief during flare-ups.  However, this does not overwhelm the other evidence in the record.  Joaquin only experienced physical difficulties in the final weeks before M.M.'s death and his suicide, and Maira never notified the Department that Joaquin was struggling.  The Department could not be deliberately indifferent to a situation of which it had no knowledge.  Joaquin's physical health did not present a substantial risk of harm to M.M, particularly not the risk that he would overdose M.M. with her allergy medication.

The Momox-Caselis family takes issue with Joaquin's initial failure to disclose his criminal history on his foster application, but the Department confirmed that Joaquin's criminal record was limited to possession of false identification and working without a work card because he was not a U.S. citizen.  His criminal history and immigration status also did not pose a substantial risk of harm to M.M., because he did not have a violent record and non-U.S. citizens may foster children.  The Momox-Caselis family argues that Joaquin's immigration status interfered with his ability to obtain subsidies for childcare, but this is not relevant to the substantial risk of harm analysis and ignores that Maira is a U.S. citizen and capable of obtaining such subsidies.

In addition, Maira and Joaquin's need for additional childcare was occasional and predominately arose during the last week preceding M.M.'s death, and they chose not to apply for subsidized daycare. There is a genuine dispute about whether they had been advised by the Department that they did not qualify for subsidized daycare due to Joaquin's immigration status or whether Maira assumed that was the case. Regardless, the lack of subsidized childcare did not pose a substantial risk of harm to M.M., because her foster parents took shifts to ensure that she and her foster brother were constantly supervised. The Juarez-Paez family was also permitted to use babysitters, pay for daycare, or use respite care as needed.

There is no evidence that the Juarez-Paez family was consistently overwhelmed by their foster care duties. Instead, Maira expressed an interest in fostering M.M.'s siblings so that the children could be together. Joaquin's occasional overwhelm was limited to when both foster children were demanding attention and he did not know whom to go to first. The Momox-Caselis family also argues that the failure to attempt reunification between the Momox-Caselis children and their natural parents amounted to deliberate indifference to a risk of substantial harm to M.M., but the Momox-Caselis family does not explain this point and it is not included in the Second Amended Complaint.

We hold that the Momox-Caselis family's second section 1983 due process claim fails, and we do not consider their arguments challenging qualified immunity.

## C.

As for their fourth and sixth claims brought pursuant to Nevada law, the Momox-Caselis family argues that there were genuine issues of material fact that the district court

ignored.  We disagree.  The district court properly decided the question of causation for the negligence claim as a matter of law rather than a matter of fact.  As for its wrongful death claim, the Momox-Caselis family addresses it in the section title but it does not cite any facts in the record or present argument relating to the claim.  The claim is, therefore, waived.

Under Nevada law, in order to prove a negligence claim, the Momox-Caselis family must prove: (1) the County owed a duty of care to M.M.; (2) the County breached that duty; (3) the breach was the legal cause of M.M.'s death; and (4) M.M. and her survivors suffered damages.  *See Scialabba v. Brandise Const. Co., Inc.*, 112 Nev. 965, 968 (Nev. 1996).  The district court held that it could not properly consider the negligence factors because the Momox-Caselis family failed to provide sufficient evidence or argument so that it could identify breach or causation by the County.  The district court also held that the County and the individual employees were entitled to discretionary act immunity.  The record supports both holdings.

We also hold that Joaquin's actions qualified as an intervening cause of M.M.'s death, so that the negligence claim fails on that ground as well.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (holding that there cannot be a genuine issue of material fact where the nonmoving party fails to make a sufficient showing to establish the existence of an essential element).  The improper administration of the allergy medicine was either intentional or accidental.  If intentional, Joaquin committed a crime by killing M.M. and his action is a superseding cause even if the County had been negligent in creating the situation by placing M.M. with the Juarez-Paez family.  *Bower v. Harrah's Laughlin, Inc.*, 125 Nev. 470, 491–92 (Nev. 2009)

(observing that the originally negligent party is only liable for a third party's intentional tort or crime if it was foreseeable). Even if accidental, the Momox-Caselis family has not presented evidence of foreseeability. As discussed above, it was unforeseeable that Joaquin would overdose M.M. on her allergy medication specifically or even generally harm her.

## V.

The Momox-Caselis family has waived its new arguments raised on appeal. The district court's summary judgment was appropriate because the Momox-Caselis family failed to carry its burden or present evidence of a genuine dispute of material fact. Its arguments relied on supposition and a mischaracterization of the evidence, while the County presented voluminous evidence to refute the Momox-Caselis family's claims.

**AFFIRMED.**