NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAR 27 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

In re: SWING HOUSE REHEARSAL AND RECORDING, INC.; PHILIP JOSEPH JAURIGUI,

Debtors.

_____

PHILIP JOSEPH JAURIGUI,

Appellant,

v.

JONATHAN MOVER,

Appellee.

No.    23-60028

BAP Nos.    22-1218
                      2:18-ap-01351-RK

MEMORANDUM[*]

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Gan, Faris, and Spraker, Bankruptcy Judges, Presiding

Submitted March 25, 2024[**]
Pasadena, California

Before: GRABER, GOULD, and FORREST, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge GOULD.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Philip Joseph Jaurigui appeals the bankruptcy court's order excepting from his bankruptcy discharge a judgment entered against him in favor of Jonathan Mover in the amount of $239,288.50, plus interest. We have jurisdiction under 28 U.S.C. § 158(d), and we affirm.

We review decisions by the Bankruptcy Appellate Panel (BAP) de novo, "apply[ing] the same standard of review that the BAP applied to the bankruptcy court's ruling." *In re Kekauoha-Alisa*, 674 F.3d 1083, 1087 (9th Cir. 2012). "We review the bankruptcy court's legal conclusions de novo and its factual findings for clear error." *Id.*

1. ***Standing.*** Jaurigui argues that Mover did not have standing to sue because Mover assigned his right to recover the $150,000 debt to 7175 WB (WB). In support of his argument, Jaurigui quotes several cases stating that a complete and unqualified assignment of a claim leaves the assignor without standing to sue. This case, however, does not involve the unqualified assignment of a claim. Under the terms of the reorganization plan in Swing House's bankruptcy case, Mover assigned his $150,000 claim to WB as security for the repayment of various debts. Upon Mover's repayment of those debts, his claim "shall be automatically transferred or assigned back to [him]." This arrangement is essentially a security agreement, and Jaurigui does not argue that Mover has defaulted on his required repayments.

Indeed, the cases Jaurigui cites support the proposition that an assignment of

a claim to secure repayment preserves the assignor's right to pursue the claim against the obligor. *See, e.g.*, *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984). Jaurigui cites no case demonstrating that California applies a different rule in this context. We therefore conclude that Mover had standing to sue Jaurigui on the $150,000 loan because Mover retained an interest in the claim.

2. *Factual Findings*. Jaurigui argues that the bankruptcy court erroneously found that: (1) it was illegal for Swing House to operate a recording studio at the Casitas Avenue location; (2) Jaurigui knew that operating a recording studio was illegal; and (3) Mover relied on Jaurigui's representations when deciding to invest in Swing House.[1] We discern no clear error in these findings.

Businesses may engage in C2 uses, which, as relevant here, are "accessory use[s] to the main use and [that] provide services for those persons employed on the premises," in an MR-1 zone. The record does not demonstrate, nor does Jaurigui argue, that operating a recording studio at Swing House was an accessory use to its main business and provided a service to its employees. Jaurigui knew that the facility "was not zoned for use as a recording studio but was zoned MR-1 for use as a

---

[1]Jaurigui also asserts in his reply brief that his statements were not the proximate cause of Mover's investment decision. This argument is forfeited because Jaurigui did not raise it in his opening brief. *See Vasquez v. Rackauckas*, 734 F.3d 1025, 1054 (9th Cir. 2013) ("Because we do not consider issues raised for the first time in reply briefs, we deem this late-raised argument forfeited.").

warehouse," and he provided no evidence that Swing House met the accessory-use requirements to operate a recording studio or any evidence supporting his belief that operating a recording studio was nonetheless permissible. The record further demonstrates that Mover relied on Jaurigui's representations. Although Mover stated that he considered other factors in his investment decision, he testified that he had no knowledge of Los Angeles's zoning laws and relied on Jaurigui with respect to the Casitas facility's zoning requirements. On this record, the bankruptcy court did not clearly err in its findings.[2]

3. ***Debt Calculation.*** Jaurigui contends that the bankruptcy court erroneously calculated the amount owed on the $150,000 loan by not reducing the total by "the value of the collateral"—an issue on which Jaurigui states Mover presented no evidence. This calculation issue was not raised either before the bankruptcy court or the BAP.

We generally decline to consider issues "raised for the first time on appeal." *Momox-Caselis v. Donohue*, 987 F.3d 835, 841 (9th Cir. 2021). Jaurigui relies on the exception to this rule for issues presenting "pure question[s] of law" where "the opposing party will suffer no prejudice as a result of the [other party's] failure to

---

[2]The bankruptcy court also found that Jaurigui made several material misrepresentations to Mover apart from the recording-studio misrepresentations. Jaurigui does not challenge the bankruptcy court's findings as to those misrepresentations, nor does he argue that those findings, standing on their own, fail to support the court's nondischargeability order.

raise the issue in the trial court." *Id.* at 841–42.

Although the question whether the bankruptcy court used the correct legal standard for calculating a debt is a legal question, whether the parties presented evidence at trial in support of their contended calculation and whether the bankruptcy court made clearly erroneous findings in its consideration of that evidence—both requiring a study of the record—are not. Moreover, even if the identified exception to forfeiture applies, "the particular circumstances of the case [do not] overcome our presumption against hearing new arguments." *Raich v. Gonzales*, 500 F.3d 850, 868 (9th Cir. 2007) (citation omitted). Jaurigui could have argued to either the bankruptcy court or the BAP that the loan amount should be offset by the value of the collateral, but he did not, and he offers no reason for his failure to do so. *Cf. AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1214 (9th Cir. 2020) (declining to consider an issue raised for the first time on appeal where the requesting party "had numerous opportunities to raise the [issue] but did not do so until we ordered supplemental briefing"). We, therefore, decline to consider this issue.

**AFFIRMED.**

*Philip Jaurigui v. Jonathan Mover*, No. 23-60028
Judge Gould, Circuit Judge, concurring in part and dissenting in part:

I concur in part in so far as I agree that Jaurigui's misrepresentations have rendered his debt obligation nondischargeable. But I dissent in part as to the majority's declining to review whether the bankruptcy court should have considered the offsetting value of collateral in calculating the debt. As the majority recognizes, we have discretion to review issues first raised on appeal if they present pure issues of law and the opposing party will not be prejudiced. MD at 5 (citing *Momox-Caselis v. Donohue*, 987 F.3d 835, 841 (9th Cir. 2021)). In my view, this presents a pure issue of law, and we should exercise our discretion to review it despite Jaurigui's failure to raise it previously.

Under applicable California law, the proper measure of damages for fraud is the difference between the actual value of what was paid and what was received in a transaction. *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1240 (1995). Even if the value of the collateral property here is undetermined and subject to factual determination, the proper formula for the calculation remains the governing principle of law. *See In re Yett*, 306 B.R. 287, 290 (9th Cir. BAP 2004) (determination of factors that must be used in a valuation calculation presents question of law (citing *Farm Credit Bank v. Fowler (In re Fowler)*, 903 F.2d 694, 696 (9th Cir.1990), *citing with approval Patterson v. Federal Land Bank (In re Patterson)*, 86 B.R. 226, 227 (9th Cir. BAP 1988))).

1

We should remand for the bankruptcy court to consider the offset issue and, if necessary, determine the value of the collateral and the amount that should be subtracted from the debt.  Mover would not be prejudiced by our review of this issue, because he can raise on remand any contentions about the value of the collateral at the time of the transaction.